**THIS VERSION INCLUDES THE ERRATA DTD 13FEB02-e**

**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 98-2247

DEE W. KILPATRICK, APPELLANT,

V.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued December 13, 2001     Decided     February 8, 2002  )

*Michael P. Horan*, of Washington, D.C., for the appellant.

*Richard Mayerick*, with whom *Leigh A. Bradley*, General Counsel; *Ron Garvin*, Assistant General Counsel; and *Carolyn F. Washington*, Deputy Assistant General Counsel, all of Washington, D.C., were on the pleadings, for the appellee.

Before HOLDAWAY, STEINBERG, and GREENE, *Judges*.

STEINBERG, *Judge*:  The appellant, through counsel, seeks review of an October 24, 1998, Board of Veterans' Appeals (Board or BVA) decision that denied his claim for Department of Veterans Affairs (VA) special adaptive housing or a special home-adaptation grant, under chapter 21 of title 38, U.S. Code, as well as his request for financial assistance for the purchase of an automobile and automobile adaptive equipment, or for adaptive equipment only, under chapter 39 of title 38.  Record (R.) at 3.  The appellant and the Secretary have both filed briefs, and, after two rounds of supplemental briefing ordered by the Court, the Court heard oral argument from the parties.  This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a).  For the reasons that follow, the Court will reverse the Board decision in part and vacate it in part and remand the matter for readjudication.

1

## I. Background

The veteran served in the U.S. Army from September 1960 to September 1963. *See* R. at 2, 14. Around 1990, apparently, he received a gunshot wound from an accidental shooting. R. at 109. In that year, the bullet that caused his gunshot wound was removed by surgery at a VA medical center, after which the veteran was ambulatory and suffered no bowel, bladder, or sexual complications. *Ibid.* However, he was later readmitted to a VA medical center due to pain from a ruptured disc at L3-4. R. at 44. Shortly thereafter, he "underwent laminectomy L1, L2, and L3 together with foraminotomy and diskectomy" to repair his injuries (R. at 44); this surgery resulted in substantial medical complications (R. at 44-45, 109-10). In October 1995, a VA regional office (RO) awarded disability compensation to him under 38 U.S.C. § 1151 for bowel dysfunction (30%), bladder dysfunction (40%), paralysis of left leg (40%), and partial paralysis of right leg (20%), as well as special monthly compensation due to paralysis of the left leg. R. at 44-45. The VARO determined that the veteran's conditions were "not the natural consequence[s] of the laminectomy". *Ibid*. In June 1996, the RO (1) increased his ratings for loss of use of both legs to 100%, for bowel dysfunction to 100%, and for bladder dysfunction to 60%; (2) granted service connection for loss of use of a creative organ, which it rated at 0%; (3) granted special monthly compensation for these conditions; and (4) granted service connection and a 10% disability rating for carpal tunnel syndrome of the right wrist. R. at 49-51. Thereafter, the veteran made a third claim to the RO, this time requesting grants for (1) specially adapted housing and a special home adaption under 38 U.S.C. § 2101(a), (2) automobile and adaptive equipment or adaptive equipment only under 38 U.S.C. §§ 3901 and 3902, and (3) vocational rehabilitation under chapter 31 of title 38, U.S. Code. *See* R. at 61-63. In November 1996, the RO denied all three claims (*ibid.*), and the veteran then appealed to the Board (R. at 86).

In the August 1998 BVA decision here on appeal, the Board remanded to the RO the vocational rehabilitation claim (R. at 9-10) and denied the housing and automobile benefits sought under chapters 21 and 39, respectively (R. at 9). The Board based its decision on VA General Counsel Precedential Opinion 24-97 (July 3, 1997) [hereinafter G.C. Prec. 24-97 or "the GC opinion"], which it recognized as binding and characterized as follows:

2

> [T]he [GC] opinion determined that a veteran with a disability that resulted from VA hospitalization . . . who has been determined eligible for compensation 'as if' such injury were service-connected pursuant to [section] 1151 is not eligible for either a special housing adaption grant or a grant for acquiring an automobile and adaptive equipment as a result of the disability caused by VA medical care.

R. at 6-7; *see also* R. at 99-105 (text of the GC opinion). The Board concluded: "Essentially, the benefits [the veteran sought], as provided under chapters 21 and 39, are beyond the scope of the grant of benefits provided under [section] 1151." R. at 7. The appellant then appealed to this Court in December 1998.

At oral argument and in their briefs, the appellant and the Secretary both rely on the language of section 1151 as dispositive, each claiming that the statute is plain on its face in allowing and limiting, respectively, ancillary benefits. Appellant's Brief (Br.) at 29; Secretary's Br. at 3. The appellant also spends a substantial portion of his brief attacking the validity of the GC opinion. Br. at 5-28, 32-37. Specifically, the appellant claims that the Board erred in relying on the GC opinion because it is procedurally invalid under 5 U.S.C. §§ 552 and 553, provisions of the Administrative Procedure Act (APA). Br. at 8-12. The Secretary declines to address the validity of the GC opinion "[a]bsent Court order", because the appellant had raised these issues before the Court for the first time, rather than exhausting his administrative remedies. Br. at 4.

The Court in March 2000 ordered the Secretary to file a supplemental brief addressing all arguments raised by the appellant and not conceded by the Secretary and also to discuss the applicability of *Maggitt v. West*, 202 F.3d 1370 (Fed. Cir. 2000), and *Stuckey v. West*, 13 Vet.App. 163 (1999), "to the Secretary's argument that the Court should not address the arguments raised by the appellant to the Court but not to the Board in this case". *Kilpatrick v. West*, 13 Vet.App. 403, 403-04 (2000) (per curiam order). The Court's order also permitted the appellant to file a response to the Secretary's supplemental brief. *Id.* at 404. In his supplemental brief, the Secretary contends, inter alia, that the APA does not apply to the GC opinion, because it is interpretive rather than substantive (Supplemental (Suppl.) Br. at 2-5) and because section 1151, under *Mintz v. Brown*, 6 Vet.App. 277 (1994), is "plain on its face" in clearly precluding non-chapters 11 and 13 ancillary benefits (Suppl. Br. at 10). The appellant argues in his supplemental reply brief that the GC opinion

3

is unreasonable, and therefore invalid, because it does not give effect to the "service-connected" language of section 1151 as defined in 38 U.S.C. § 110(16). Suppl. Reply Br. at 8-12. In response to the Court's order to address *Maggitt* and *Stuckey*, the Secretary concedes that the Court, by virtue of its jurisdiction over the appeal, does, in fact, have jurisdiction under *Maggitt*, 202 F.3d at 1377, to hear all arguments raised by the appellant. Suppl. Br. at 11. The Secretary does not discuss *Stuckey*. *See* Suppl. Br. at 11-12. In his supplemental reply brief, the appellant reiterates many of his prior arguments and, in addition, argues that, under *SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943), *Mintz* may not be invoked to justify the GC opinion, because the VA General Counsel (VAGC) did not rely on *Mintz* in writing the opinion. Suppl. Reply Br. at 1. Furthermore, the appellant argues that the GC opinion should be invalidated on the basis that it conflicts with law and policy. Suppl. Reply Br. at 8-11.

Subsequently, the Court determined that further supplemental briefing was necessary and issued a May 2001 order requiring the parties to discuss "(1) the legislative history of [section 1151] or of any other statutory provision relating to the appellant's claims for ancillary benefits under chapters 21, 23, and 39 . . . in terms of any connection between section 1151 and such potential ancillary benefits . . . , or (2) any pertinent regulatory history regarding those statutory provisions and any such connection." *Kilpatrick v. Principi*, 15 Vet.App. 22, 22 (2001) (per curiam). In response, neither party has been able to refer to any significant legislative history to aid the Court. Notably, the parties do not discuss in their briefs and were not prepared to discuss at oral argument the specific provisions of chapters 21 and 39, the chapters under which the appellant seeks benefits.

## II. Analysis

### A. Section 1151(a) Benefits

Section 1151(a) provides, in pertinent part:

> Where any veteran shall have suffered an injury, or an aggravation of an injury, as the result of hospitalization, medical or surgical treatment . . . awarded under any of the laws administered by the Secretary, or as a result of having submitted to an examination under any such law, and not the result of such veteran's own willful misconduct, and such injury or aggravation results in additional disability to or death of such veteran, disability or death

> *compensation* under this chapter and dependency and indemnity *compensation* under chapter 13 of this title shall be awarded *in the same manner as if such disability, aggravation, or death were service-connected*.

38 U.S.C. § 1151(a) (1994) (amended, effective Oct. 1, 1996) (emphasis added).  Section 101(16) defines "service-connected" as "with respect to disability or death, that such disability was incurred or aggravated, or that the death resulted from a disability incurred or aggravated, in line of duty in the active military, naval, or air service."  38 U.S.C. § 101(16).

Both parties argue that section 1151 is plain on its face.  The appellant argues that section 1151(a) "states clearly" that "any disability a veteran sustains while receiving VA medical treatment is to be treated by VA 'as if such disability' is service-connected".  Br. at 29.  The Secretary argues that the use of the word "compensation" in section 1151 refers only to "monthly payment[s]" under section 101(13), and therefore, "[p]otential awards under section 1151 [are] legislatively self-limiting to potential awards of compensation under chapters 11 and 13 of title 38 exclusively, to the exclusion of other benefits under other chapters."  Br. at 3.  Both arguments are misplaced.  Although section 1151(a) provides for the payment of compensation (disability compensation under chapter 11 or dependency and indemnity compensation under chapter 13) to the class of beneficiaries to which the appellant belongs, the parties seem to have forgotten that the appellant is seeking benefits *under chapters 21 and 39* and that it is the benefits provisions of those chapters that must be examined in order to decide the questions before the Court.  For the reasons that follow, the provisions of section 1151(a) and section 101(16), in and of themselves, neither allow for nor restrict eligibility for payments under other chapters of title 38 or under any non-chapter 11 or 13 authorities.  *See Hamilton v. Brown*, 4 Vet.App. 528, 536 (1993) (en banc) (holding that definitions, "whether statutory or  regulatory, are not themselves operative provisions of law").

As to the Secretary's reliance on *Mintz* as authority for the proposition that section 1151 precludes non-chapter 11 and 13 ancillary benefits, the Court notes that *Mintz* related to service-connected burial benefits sought by a section 1151 beneficiary under section 2307, not chapters 21 and 39.  *Mintz*, 6 Vet.App. at 282-83; *see also* 38 U.S.C. § 2307 (providing for payment of burial and funeral expenses for deceased veteran who "dies as the result of a service-connected disability").  In *Mintz*, the Court held that "a claimant would not be entitled to . . . burial benefits . . . under

5

38 U.S.C. § 2307, unless service connection is established under a statutory provision other than 38 U.S.C. § 1151". *Ibid.* That is, to determine eligibility for ancillary benefits, the statutory eligibility criteria – here, those in chapter 23 – under which the veteran is seeking benefits must be examined because, by its very terms, section 1151 relates only to the award of ***compensation*** under chapters 11 and 13, and an award of compensation is not at stake in the instant case. Furthermore, the Court notes that section 2307, at issue in *Mintz*, awards benefits for "a veteran who dies as the result of service-connected disability", rather than using the eligibility language "entitled to compensation under chapter 11", as do sections 3901 and 2101. *Cf.* 38 U.S.C. § 2302(a)(1) (providing for payment of funeral and burial expenses where veteran did not die from service-connected disability but "at the time of death was in receipt of compensation"). Therefore, the Secretary's arguments in reliance on *Mintz* are not persuasive.

The appellant's contention that section 1151 "clearly" dictates that a section 1151 disability "***is to be treated by VA 'as if such disability' is service connected***" (Br. at 29 (emphasis added)) is equally unpersuasive. Section 1151 does not confer upon its beneficiaries the ***status*** of service connection; rather, section 1151 ***awards compensation as if the claimant were service connected***. In other words, section 1151 nowhere provides that the ***disability*** is, as the appellant suggests (Br. at 29), to be treated generally as if it were service connected. Similarly unavailing is the appellant's attempt to isolate the definition of "service-connection" in section 101(16) as though it could somehow assume independent meaning outside section 1151's operative provisions. Instead, the definition must take its meaning from the language of section 1151, *see Hamilton*, *supra*, and that section's operative language relates only to providing for compensation payments under chapter 11 or 13 and not to the nature of disabilities in some generic sense. Accordingly, in order to determine the eligibility of a section 1151 beneficiary for benefits under chapters 21 and 39, the Court now turns to the chapter 21 and 39 provisions at issue.

### B. Chapter 21 Ancillary Benefits

Section 2101(a) of title 38, U.S. Code, provides:

> (a) The Secretary is ***authorized***, under such regulations as the Secretary may prescribe, to assist any ***veteran who is entitled to compensation under chapter 11 of this title for permanent and total service-connected disability***--

(1) ***due to the*** loss, or ***loss of use***, of ***both lower extremities***, such as to preclude locomotion without the aid of braces, crutches, canes, or a wheelchair, or

(2) which includes (A) blindness in both eyes, having only light perception, plus (B) loss or loss of use of one lower extremity, or

(3) due to the loss or loss of use of one lower extremity together with (A) residuals of organic disease or injury, or (B) the loss or loss of use of one upper extremity, which so affect the functions of balance or propulsion as to preclude locomotion without the aid of braces, crutches, canes, or a wheelchair, in acquiring a suitable housing unit with special fixtures or movable facilities made necessary by the nature of the veteran's disability, and necessary land therefor. The regulations of the Secretary shall include, but not be limited to, provisions requiring findings that (1) it is medically feasible for such veteran to reside in the proposed housing unit and in the proposed locality; (2) the proposed housing unit bears a proper relation to the veteran's present and anticipated income and expenses; and (3) the nature and condition of the proposed housing unit are such as to be suitable to the veteran's needs for dwelling purposes.

38 U.S.C. § 2101(a) (emphasis added). The corresponding VA regulation, 38 C.F.R. § 3.809, requires, in order for a veteran to be eligible for section 2101(a) benefits, that "[t]he disability must have been incurred or aggravated ***as the result of [active] service*** . . . and the veteran must be entitled to compensation for permanent and total disability due to", inter alia, the loss of use of both legs. 38 C.F.R. § 3.809(b) (2001) (emphasis added).

Because the veteran is receiving section 1151 compensation benefits at a 100% rating due to the loss of use of both of his lower extremities (R. at 51), under the plain meaning of section 2101(a)(1) he is within the statutory eligibility criteria because he is "entitled to compensation under chapter 11" – specifically, under section 1151 – "for permanent and total service-connected disability" for a listed disability, the loss of use of both legs. Moreover, even if the Court were to find section 2101(a) ambiguous, which it does not, as to the eligibility of section 1151 beneficiaries, under *Brown v. Gardner* any interpretive doubt in statutory interpretation is to be "resolved in the veteran's favor". *Gardner*, 513 U.S. 115, 118 (1994) (citing *King v. St. Vincent's Hospital*, 502 U.S. 215, 220-221 n.9 (1991)); *see also Jones (Ethel) v. West*, 136 F.3d 1296, 1299 n.2 (Fed. Cir. 1998) (same); *Allen (William) v. Brown*, 7 Vet.App. 439, 446 (1995) (en banc) (same). The Court notes that section 2101(a)'s permissive language that "[t]he Secretary is ***authorized***, under such regulations

7

as the Secretary *may prescribe*," (emphasis added) might be read as establishing only a discretionary program and not an entitlement for those in the defined eligibility categories. *But see Matter of Wick*, 4 Vet.App. 487, 494 (1993) (holding as follows: "The provision of § 5904(d)(3) that the Secretary 'may direct' payment must be read in light of the 'is to be paid to the attorney by the Secretary' language of [38 U.S.C.] § 5904(d)(2)(A). There can be no question that Congress, in enacting § 5904(d), contemplated an obligatory rather than a discretionary direct payment by the Secretary to a claimant's attorney."), *rev'd on other grounds*, 40 F.3d 367 (Fed. Cir. 1994).

The Court need not resolve that question, however. Even if it were to be assumed that section 2101(a) establishes a discretionary program, the Secretary's discretion would be only as to whether to implement or not the program for the beneficiaries prescribed by Congress. There is no reason to believe that Congress gave him leave to pick and choose from the classes to which Congress granted eligibility – *all* those veterans entitled to compensation under chapter 11 who have any of the requisite disabilities. For example, assuming again that the Secretary has discretion to implement the provisions of section 2101(a), he could not create entitlement for those veterans listed in clause (1), who suffered loss or loss of use of both legs, 38 U.S.C. § 2101(a)(1), and not for those listed in clause (2), who are blind in both eyes and suffer from loss or loss of use of one leg, 38 U.S.C. § 2101(a)(2), or for those listed in clause (3), who suffer from loss or loss of use of one leg as well as either residuals of organic disease or loss or loss of use of an arm, 38 U.S.C. § 2101(a)(3). In the same manner, the Secretary could not create entitlement for those injured during active service and not for those injured during hospital treatment; both are equally "entitled to compensation under chapter 11 . . . for permanent and total service-connected disability". 38 U.S.C. § 2101(a).

Although counsel for the Secretary conceded the preceding point at oral argument, this is, nonetheless, precisely what the regulation seems to do by adding a condition on chapter 21 eligibility, in addition to "entitle[ment] to compensation under chapter 11 of this title for permanent and total service-connected disability", 38 U.S.C. § 2101(a), so as to require that the disability be "incurred or aggravated as the result of [active] service", 38 C.F.R. § 3.809(a), (b). It would be inconsistent with the overall statutory scheme to implement benefit entitlement only for *some* of the members of the classes of veterans listed in the statute. *See generally Bailey v. United States*,

516 U.S. 137, 145 (1995) (considering "not only the bare meaning of [a] word but also its placement and purpose in the statutory scheme"); *Reno v. Koray*, 515 U.S. 50, 56-57 (1995) (construing statutory language in context of statutory scheme); *Talley v. Derwinski*, 2 Vet.App. 282, 287 (1992) (holding that "[j]ust as a statute should be construed so as to sustain its constitutionality, . . . so should regulations be construed so as to harmonize them with the authorizing law"); *United States v. Choice*, 201 F.3d 837, 840 (6th Cir. 2000) (explaining that court should look at language and design of statute as whole in interpreting plain meaning); *Robbins v. Bentsen*, 41 F.3d 1195, 1198 (7th Cir. 1994) (noting that regulations "cannot trump the plain language of statutes" and refusing to read statute and regulation as in conflict where such reading not necessary); *United States v. Meyers*, 952 F.2d 914, 918 (6th Cir. 1992), *cert. denied* 503 U.S. 994 (1992); *Emery Mining Corp. v. Sec'y of Labor*, 744 F.2d 1411, 1414 (10th Cir. 1984) (reasoning that regulation must be read in light of statute it implements so as to harmonize with and not to conflict with statute and citing *Trustees of Indiana Univ. v. United States*, 618 F.2d 736, 739 (Ct. Cl. 1980)); *United Telecomm., Inc. v. Comm'n of Internal Revenue*, 589 F.2d 1389, 1390 (10th Cir. 1978) (same). To the extent that this regulation may be read as denying eligibility to a section 1151 recipient, it is invalid because it improperly excludes an included class of beneficiaries under the statute. *See Gallegos v. Gober*, 14 Vet.App. 50, 57-58 (2000) (invalidating regulation on grounds that it exceeded Secretary's authority), *argued*, No. 01-7037 (Fed. Cir. Dec. 7, 2001).

Furthermore, an examination of the entire statutory scheme regarding ancillary benefits under chapter 21 demonstrates that any interpretation that would give the Secretary discretion in implementing its provisions (by virtue of the language "is authorized" to provide assistance and "may prescribe" regulations) could lead to an absurd result. Under such a construction, section 2101(a), under which the appellant is *eligible* by virtue of his loss of use of both legs, then would contrast markedly with section 2101(b), which *directs* that "the Secretary . . . *shall* assist any veteran *(other than a veteran who is eligible for assistance under subsection (a) of this section)* who is entitled to compensation under chapter 11 of this title for a permanent and total service-connected disability", including for blindness in both eyes and loss or loss of use of both hands. 38 U.S.C. § 2101(a), (b) (emphasis added). Such a reading would *require* that the Secretary assist veterans who are entitled to compensation under chapter 11 for blindness in both eyes or loss or loss of use of both hands, but

permit him to exclude benefits entitlement for apparently-no-less-disabled veterans with chapter 11-compensable disabilities due to loss or loss of use of both legs, blindness in addition to loss or loss of use of one leg, loss or loss of use of one leg together with either residuals of organic disease or with injury or loss or loss of use of an arm. There is no legislative history available that clarifies why any such discrepancy would exist and, if so, whether it was intentional. An interpretation of the statute that would result in section 1151 beneficiaries being treated differently based on whether they lose their hands or their legs would seem to be such an anomalous result that it would prevail only if it were clear that Congress specifically intended to make such a distinction. *See Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 509 (1989) (declining to apply plain language of rule of evidence because "literal reading would compel an odd result in a case like this"); *United States v. Am. Trucking Ass'ns, Inc.*, 310 U.S. 534, 543 (1940) (holding that where plain meaning produces an "unreasonable result", court will follow purpose, not rule); *Allen (William) v. Principi*, 237 F.3d 1368, 1375-76 (Fed. Cir. 2001); *Thayer v. Principi*, 15 Vet.App. 204, 210 (2001) (en banc) (holding that when interpreting statute, Court must avoid "[a] conclusion that . . . is not supported when construing every part or section of the statute and would yield an absurd result" and citing *Trilles v. West*, 13 Vet.App. 314, 324 (2000)); *Holliday v. Principi*, 14 Vet.App. 280, 285 (2001) (citing precedent regarding need to avoid absurd result when interpreting statute); *Gardner v. Derwinski*, 1 Vet.App. 584, 587 (1991) (explaining the "absurd result" exception to plain meaning rule) (citing *Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 470-71 (1989) (Kennedy, J., concurring), *aff'd*, 5 F.3d 1456 (Fed. Cir. 1993) *and* 513 U.S. 115 (1994)); *Dyer v. United States* 832 F.2d 1062, 1066 (9th Cir. 1987) (same as *Am. Trucking Ass'ns, Inc.*, *supra*) (citing *Betchel Const., Inc. v. United Bhd. of Carpenters*, 812 F.2d 1220, 1225 (9th Cir. 1987); *Chapman v. United States*, 500 U.S. 453, 476 (1991) (Stevens, J., dissenting) ("There is nothing in our jurisprudence that compels us to interpret an ambiguous statute to reach such an absurd result. In fact, we have specifically declined to do so in the past, even when the statute was not ambiguous, on the ground that Congress could not have intended such an outcome.");*Green*, 490 U.S. at 527 (Scalia, J., concurring in judgment) ("We are confronted here with a statute which, if interpreted literally, produces an absurd, and perhaps unconstitutional, result."); *Trustees of Indiana Univ.*, *supra* (same as *Am Trucking Ass'ns, Inc.*).

In view of the foregoing analysis, the Court holds that 38 C.F.R. § 3.809 is invalid to the extent that it is interpreted to exclude section-1151 beneficiaries by requiring that a listed disability be "incurred or aggravated as the result of [active] service".  For the same reasons, the GC opinion is also invalid in purporting to bar a section-1151 beneficiary from eligibility.  G.C. Prec. 24-97 ("veteran with a disability that resulted from VA hospitalization or medical or surgical treatment who has been determined eligible for compensation 'as if' such injury were service connected pursuant to 38 U.S.C. § 1151 is not eligible for a special housing adaptation grant as a result of the disability caused by VA medical care"); *cf. Snyder v. Principi*, 15 Vet.App. 285, 292-94 (2001) (invalidating GC precedential opinion in conflict with Court's analysis of statutory provisions);  *Cox v. Principi*, 15 Vet.App. 280, 281, 283 (2001) (same).  Moreover, because the Court holds that the GC opinion is invalid on these grounds, we need not address the appellant's contentions regarding any lack of APA-prescribed procedural compliance.

## C.  Chapter 39 Ancillary Benefits

In its decision, the BVA stated that the GC opinion "specifically addressed eligibility for . . . chapter 39 benefits" (R. at 8) and "determined that a veteran [receiving benefits under section 1151] is not eligible for . . . acquiring an automobile and adaptive equipment as a result of the disability caused by VA medical care" (R. at 7).  However, the GC opinion specifically pertained to eligibility only "for a special housing adaptation grant as a result of the disability caused by VA medical care" and thus constituted a concrete BVA-binding opinion, rather than casual advice, that a section 1151 beneficiary is ineligible only under that chapter.  The Court notes that in its discussion, the GC stated:

> The rationale of this opinion would equally apply to other non-chapter 11 or 13 benefits such as automobiles and adaptive equipment under chapter 39 of title 38 ***where eligibility is conditioned on the veteran having a service-connected condition***, ***unless the statute*** or legislative history ***clearly and unambiguously provided otherwise***.

G.C. Prec. Opinion 24-97, at para. 23 (emphasis added).  The discrepancy between the assertion by the BVA that the GC specifically addressed and reached a binding opinion regarding chapter 39 benefits and the conditional language of the opinion is substantial.  The GC opinion did not examine

11

the chapter 39 statutory provisions potentially awarding benefits under that chapter, nor did it provide any basis for a determination that eligibility thereunder is "conditioned on the veteran['s] having a service-connected condition". *Ibid.* Moreover, the GC opinion cites no authority for requiring that veterans' benefits eligibility must be "clearly and unambiguously provided" in "a statute or legislative history". *Ibid.* Indeed, any such interpretive requirement would conflict with the interpretive rule set forth in *Brown v. Gardner* and the related cases cited in part II.B., above.

The Board is required to consider, and discuss in its decision, all "potentially applicable" provisions of law and regulation and to include in its decision a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; the statement must be adequate to enable an appellant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See* 38 U.S.C. § 7104(a), (d)(1); *Weaver v. Principi*, 14 Vet.App. 301, 302 (2001) (per curiam order); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Schafrath v. Derwinski*, 1 Vet.App. 589, 593 (1991). Here, the Board erred by interpreting the GC opinion to bar a section 1151 beneficiary from eligiblity "for *either* a special housing adaption grant or a grant for acquiring an automobile and adaptive equipment as a result of the disability caused by VA medical care". R. at 6-7 (emphasis added). Because the GC opinion did not reach a specific holding as to chapter 39 benefits based on analysis of chapter 39 provisions in light of the *Brown v. Gardner* interpretive rule, the Board's reliance on it as binding precedent precluding those benefits renders the BVA decision deficient in terms of an adequate statement of reasons or bases. *See Weaver*, *Allday*, and *Schafrath*, all *supra*. Furthermore, the Board's failure to look to the language of sections 3901 and 3902 in determining the appellant's entitlement to benefits thereunder renders its decision lacking an adequate statement of reasons or bases on that basis as well. The Court will thus vacate that part of the Board decision and remand the matter for readjudication as to chapter 39 eligibility.

As noted in part II.B., above, regarding chapter 21 benefits, the entire statutory scheme must be examined to determine eligibility under that program. *See Reno*, *Bailey*, *Talley*, *Choice*, *Robbins*, *Meyers*, *Emery*, and *United Telecomm. Inc.*, all *supra*. The same is true regarding section 3902 of title 38, U.S. Code, "Assistance for providing automobile and adaptive equipment", which provides, in pertinent part:

12

(a) The Secretary, under regulations which the Secretary shall prescribe, shall provide or assist in providing an automobile or other conveyance to each *eligible person* by paying . . . .

(b)(1) The Secretary, under regulations which the Secretary shall prescribe, shall provide each *eligible person* the adaptive equipment deemed necessary . . . ."

38 U.S.C. § 3902 (emphasis added). Section 3901(a) defines "eligible person" as "any veteran entitled to compensation under chapter 11 of this title for any of the disabilities described . . . below, *if the disability is the result of an injury incurred or disease contracted in or aggravated by active military, naval, or air service*", including "permanent loss of use of one or both feet . . . ." 38 U.S.C. § 3901(a) (emphasis added). In contrast, section 3902(b)(2) provides, in pertinent part: "In the case of any veteran (other than a person eligible for assistance under paragraph (1) of this subsection) *who is entitled to compensation for ankylosis* . . . , the Secretary, under regulations which the Secretary shall prescribe, *shall provide* such adaptive equipment to overcome the disability resulting from such ankylosis . . . ." 38 U.S.C. § 3902(b)(2) (emphasis added). Lastly, 38 C.F.R. § 3.808(b)(2) provides: "Veterans not serving on active duty must be entitled to compensation for the disability. As to any claimant the disability must be *service connected in accordance with usual criteria*. (See §§ 3.1 (m) and (n), 3.301-3.310.)". 38 C.F.R. § 3.808(b)(2) (2001) (emphasis added). The Court notes that § 3.1(m) deals with the "in the line of duty" service-connection requirement, § 3.1(n) deals with "willful misconduct" as an exception to service connection, and §§ 3.301-3.310 deal with these and other elements of service connection. Noticeably absent from the Secretary's regulatory reference list of "usual criteria" is § 3.358, which is the regulation implementing section 1151.

Under section 3902(b)(2), the beneficiaries described are not defined by reference to the "eligible person" standard as are those described in section 3901(a). As a result of this distinction, as long as a subsection (b)(2)-described veteran suffers from ankylosis, that veteran appears to have a clear entitlement ("the Secretary *shall* provide" (emphasis added)) to the benefits of an automobile or of adaptive automobile equipment. If section 3902(a) and section 3902(b)(1) are read, by virtue of their express incorporation of "eligible person" and its section 3901 definition, to exclude section 1151 beneficiaries from chapter 39 benefits, then the statutory scheme, including the entitlement set forth in section 3902(b)(2), would yield the anomalous result of *entitling to benefits* a veteran who,

13

during hospital treatment, incurred injuries resulting in ankylosis, but ***excluding from benefits*** a veteran who suffered a wrongful amputation (or some other non-ankylosis section 1151-qualifying disability). Such a discrepancy might be seen as odd, unreasonable, or absurd, as discussed in part II.B., above, regarding chapter 21 benefits. *See Green*, 490 U.S. at 509; *Public Citizen*, *Am. Trucking Assn's, Inc.*, *Thayer*, *Holliday*, *Allen (William)*, *Trilles*, *Gardner*, *Dyer*, *Betchel Constr., Inc.*, *Trustees of Indiana Univ.*, and *Chapman*, all *supra*; *Green*, 490 U.S. at 527 (Scalia, J., concurring in the judgment). The Court notes that neither the parties nor the Court has found legislative history indicating, one way or the other, whether Congress intended that section 1151 beneficiaries be entitled to automobile or adaptive automobile benefits.

Therefore, in determining on remand the extent to which section 1151 recipients are entitled to chapter 39 benefits, the Secretary must reexamine this matter in the context of the entire statutory scheme, regarding ancillary benefits, including our holding today regarding chapter 21 entitlement, and the lack of reference to § 3.358 in the chapter 39 regulation (38 C.F.R. § 3.308(b)(2)). The Court stresses that this chapter 39 matter is one for determination in the first instance by the Secretary, and the Court at this time expresses no view on the questions involved except that they need to be addressed by the Secretary. Of course, it may ultimately be that they can be resolved fairly only by recourse to the Congress. *See Morton v. West*, 12 Vet.App. 477, 485-86 (1999), *vacated on other grounds by* 14 Vet.App. 174 (2000) (per curiam order) (withdrawing prior Court opinion vacating underlying BVA decision, and dismissing appeal, all due to death of appellant while case was on appeal from this Court's opinion).

### III. Conclusion

Upon consideration of the parties' pleadings, oral argument, and the forgoing analysis, the Court (1) reverses the October 1998 BVA decision as to the chapter 21 claim and remands that matter for expeditious award of chapter 21 benefits to the appellant, and (2) vacates the BVA decision as to the chapter 39 claim and remands that matter for expeditious further development and issuance of a readjudicated decision supported by an adequate statement of reasons or bases, *see* 38 U.S.C. §§ 1151, 2101(a), 3901(a), 5107, 7104(a), (d)(1); *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991) – all consistent with this opinion and in accordance with section 302 of the Veterans'

14

Benefits Improvements Act, Pub. L. No. 103-446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims remanded by BVA or the Court). *See Allday*, 7 Vet.App. at 533-34. Furthermore, the Court invalidates G.C. Prec. 24-97 and 38 C.F.R. § 3.809 to the extent that they are inconsistent with 38 U.S.C. § 2101(a) as herein interpreted. On remand, the appellant will be free to submit additional evidence and argument on the remanded claim in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order) (concluding that an appellant is entitled, until 90 days after Board mails postremand notice to appellant, to submit additional evidence and argument or to request hearing on appeal at which appellant may submit new evidence). The Court notes that a remand by this Court and by the Board confers on an appellant the right to VA compliance with the terms of the remand order and imposes on the Secretary a concomitant duty to ensure compliance with those terms. *See Stegall v. West*, 11 Vet.App. 268, 271 (1998). A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new final Board decision is mailed to the appellant. *See Marsh v. West*, 11 Vet.App. 468, 472 (1998).

REVERSED IN PART, VACATED IN PART AND REMANDED.

15