# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 01-623

ELLIS C. SMITH, APPELLANT,

v.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

Before FARLEY, IVERS, and STEINBERG, *Judges*.

## O R D E R

The appellant, through counsel, seeks review of a December 12, 2000, decision of the Board of Veterans' Appeals (Board or BVA) that, inter alia, granted a Department of Veterans Affairs (VA) rating of 10% (but no higher) effective June 10, 1999, for service-connected bilateral tinnitus pursuant to Diagnostic Code (DC) 6260 but denied a VA compensable disability rating prior to that date. Record (R.) at 3; *see* 38 C.F.R. § 4.87, DC 6260 (1999, 2000). Prior to June 10, 1999, DC 6260 provided for a 10% rating for tinnitus where it was "[p]ersistent as a symptom of head injury, concussion[,] or acoustic trauma." 38 C.F.R. § 4.87a, DC 6260 (1998). As revised effective June 10, 1999, DC 6260 provides for a 10% rating for "[t]innitus, recurrent", and so provided at the time of the Board decision. 38 C.F.R. § 4.87, DC 6260 (2002) [hereinafter "current DC 6260"].

In its December 2000 decision, the Board determined that the amended, current DC 6260 was more favorable than the pre-June 10, 1999, DC (hereinafter pre-1999 DC 6260) and applied that version to the veteran's claims, as of June 10, 1999 (R. at 6-7, 9); the Board concluded that prior to that date, the veteran did not satisfy the criteria for a 10% rating under pre-1999 DC 6260 because his tinnitus was not "persistent". R. at 8. The appellant has filed a brief, the Secretary has filed a brief, and the appellant has filed a reply brief. As requested by the Court, *Smith v. Principi*, No. 01-623, 2001 WL 668904 (Vet. App. June 8, 2001) (order) (hereinafter *Smith I*), the parties address, inter alia, arguments regarding waiver of this Court's consideration on appeal of the Veterans Claims Assistance Act of 2000, Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (VCAA).

The appellant argues principally (1) that tinnitus that "periodically comes and goes over at least a 15-year period undeniably satisfies the plain meaning of 'persistent'" in pre-1999 DC 6260 and, thus, the Board's conclusion to the contrary was "legal error" (Brief (Br.) at 4-5, 8-9), and (2) that the Board misinterpreted both pre-1999 and current DC 6260 when it failed to award two separate 10% disability ratings, one for each ear, for his service-connected tinnitus (Br. at 10-12). The Secretary counters these arguments and requests, inter alia, affirmance of the BVA decision. Br. at 5-14.

In November 2002, the Court stayed this case pending disposition of *Wanner v. Principi*, which involved, inter alia, some of the same issues presented in the instant appeal. *Smith v. Principi*, No. 01-623, 2002 WL 31749086 (Vet. App. Nov. 25, 2002) (order). The Court issued an opinion in *Wanner* in February 2003. *Wanner*, 17 Vet.App. 4 (2003) (consolidated with *Wright v. Principi*, No. 01-1012). In *Wanner*, the Court held, inter alia, that by failing to address 38 C.F.R. § 4.25(b) (2002), which provides that all disabilities "are to be rated separately", the Board failed to provide an adequate statement of reasons or bases for its determination that DC 6260 provides for only one rating for bilateral tinnitus (rather than two, one for each ear). *Wanner*, 17 Vet.App. at 13. The Court also held that the trauma requirement contained in pre-1999 DC 6260 is "in violation of a statutory right" and "not in accordance with law" pursuant to 38 U.S.C. § 7261(a)(3)(C) and (A), respectively, because that requirement conflicts with the directive in section 1110 that "***any*** veteran thus disabled" will receive disability compensation and because that requirement is the product of "arbitrary and capricious" rulemaking pursuant to section 7261(a)(3)(A). *Wanner*, 17 Vet.App. at 17-18. The Court then invalidated the trauma requirement in pre-1999 DC 6260, vacated the Board decision, and ordered the Board on remand (1) to apply only the "persistent" criterion of pre-1999 DC 6260 to the appellants' claims for compensable ratings prior to June 10, 1999, not the trauma requirement, and (2) to consider § 4.25(b) in reassessing the appellant's claim for two 10% ratings for his bilateral tinnitus. *Wanner*, 17 Vet.App. at 18-19. The *Wanner* precedent applies to the instant case and requires a remand for readjudication, in light of § 4.25(b), of the appellant's claim for two 10% ratings.

In the instant case, the Board stated in determining that the veteran did not satisfy the requirements for a 10% rating under pre-1999 DC 6260:

> The proposed amendment to [DC 6260] indicated that tinnitus is a subjective sensation which, under certain circumstances, comes and goes. 59 Fed. Reg. [17,295,] 17[,]297 (Apr[.] 12, 1994) [(Supplementary Information)]. The requirement that the tinnitus be "recurrent" means that it might not always be present, but that it returns at regular intervals. *Id*. . . .
>
> . . . .
>
> The evidence does not show that the criteria for a compensable rating were met under the old regulations. The veteran was granted service connection for tinnitus as due to in-service acoustic trauma, resolving reasonable doubt in his favor. However, it must be noted that no medical professional has definitively concluded that the etiology of the veteran's tinnitus is noise exposure, and the medical evidence shows several incidents of head trauma since the veteran's separation from service, as well as post-service noise exposure. Accordingly, the medical evidence is not at least in equipoise with respect to

2

assigning an acoustic trauma etiology to the veteran's tinnitus. It is speculative at best. While the medical evidence supporting such a conclusion was not present, the RO concluded that there was sufficient evidence to support a grant of service connection.

However, the medical evidence clearly establishes that the veteran's tinnitus is not persistent. Persistent is defined as insistently repetitive or continuous, tenacious, or enduring. *Webster's II New College Dictionary* at 820 (1995). The veteran's statements indicate that the tinnitus is not enduring, continuous, or repetitive. Rather, it occurs occasionally or periodically. ***Although there may be time periods during which he experiences several days of tinnitus per week, there are also time periods during which it is not noticeable. Therefore, under [pre-1999 DC 6260], a noncompensable disability rating for tinnitus was proper.***

. . . For the reasons discussed above, the medical evidence did not establish that the veteran's tinnitus is persistent or due to acoustic trauma, and there is no reasonable doubt on this issue that could be resolved in his favor. Accordingly, the Board concludes that the preponderance of the evidence is against the claim for a compensable disability rating for tinnitus prior to June 10, 1999.

R. at 7-8 (emphasis added).

The difference between the requirements of "persistent" and "recurrent" in the pre-1999 and current DCs, respectively, as applicable to the condition of tinnitus, appears negligible, if indeed there is a meaningful distinction. "Tinnitus" is "a noise in the ears, such as ringing, buzzing, roaring or clicking." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY (DORLAND'S) 1714 (28th ed. 1994). "Persistent" is defined as, inter alia, "continuing" and "constantly repeated", whereas "recurrent" is defined as, inter alia, "appearing or occurring again or periodically." WEBSTER'S NEW WORLD DICTIONARY 1007, 1123 (3d ed. 1988). Based on the plain meaning of these words, it seems extremely difficult for an adjudicator to determine objectively that something that is "recurrent" is not also "persistent". *See Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993) ("[t]he starting point in interpreting a statute is its language"). The Secretary has provided no regulatory guidance as to the meaning of either "persistent" in pre-1999 DC 6260 or "recurrent" in current DC 6260; for example, neither is defined or explained in terms of the frequency required to satisfy the rating criteria. *Cf., e.g.,* 38 C.F.R. §§ 4.88b, DC 6354 (2002) (providing ratings for chronic fatigue syndrome based on specific degree and length of periods of incapacitation), 4.97, DC 6514 (2002) (providing ratings for sinusitis based on specific number, degree, and length of episodes), 4.114, DC 7305 (2002) (providing "mild", "moderate", "moderately severe", and "severe" ratings for ulcers based on specific frequency and length of symptoms).

Moreover, the Secretary's comments in the Supplementary Information accompanying his proposal of the adoption of the current DC point to the lack of clarity in pre-1999 DC 6260's use of "persistent". The Secretary stated:

> The evaluation for tinnitus . . . currently requires that the condition be "persistent" in order to qualify for a 10 percent evaluation. Tinnitus is a subjective sensation which, under certain circumstances, comes and goes. The word "persistent" suggests a meaning of constant, and we propose to replace it with "recurrent," meaning that the tinnitus might not always be present, but that it does return at regular intervals. ***Requiring that tinnitus be "recurrent" will allow a realistic evaluation of the typical disablement from this condition.***

59 Fed. Reg. at 17,297 (emphasis added). Hence, based on the recognition that, because tinnitus may come and go, requiring that tinnitus be "persistent" in order to be compensable would be unrealistic to the extent that "persistent" were to be read as suggesting a meaning of "constant", the Secretary promulgated current DC 6260. *See ibid*. It appears, therefore, that the Secretary has already determined that a reading of "persistent" as a more strict standard than "recurrent" insofar as constancy is concerned applies an unrealistic evaluation criterion for this condition. Yet, that is what the Board appears to have done. The Board paraphrased only *selectively* from the Supplementary Information passage quoted in full above and omitted any reference to the Secretary's concession that an attribute of constancy was not well suited for evaluating tinnitus. R. at 7. Instead, the Board based its conclusion solely on one dictionary definition of "persistent". R. at 8. That interpretation of "persistent" "defines [the regulatory term] too narrowly" as applied to tinnitus. *Suozzi v. Brown*, 10 Vet.App. 307, 311 (1997) (holding that Secretary "defines 'corroboration' far too narrowly" in interpreting requirement in 38 C.F.R. § 3.304(f) that there must be "credible supporting evidence that the claimed in-service stressor actually occurred" in order for service connection to be awarded for post-traumatic stress disorder).

In light of this flawed analysis and, despite the Board's conclusion to the contrary, because "persistent" and "recurrent" appear to have overlapping definitions, the Court holds that the Board's conclusion that the appellant's tinnitus was not "persistent" as required by pre-1999 DC 6260 must be reversed because it was reached in a manner that was "arbitrary, capricious, [and] an abuse of discretion." *See* 38 U.S.C. § 7261(a)(3)(A) (directing Court to "hold unlawful and set aside decisions" of the Board found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"); *Bailey v. Derwinski*, 1 Vet.App. 441, 446-48 (1991) (reversing as product of arbitrary and capricious decisionmaking process Board decision that veteran did not have arthritis in his shoulder, because Board rejected evidence pertaining to that condition that was almost identical to evidence on basis of which Board had previously awarded service connection for post-traumatic osteoarthritis of wrists and remanding for determination of degree of disability based on this reversed finding); R. at 88, 101, 142, 161, 170, 242-45, 286; *see also Wanner*, 17 Vet.App. at 18 (holding that the inclusion of trauma requirement in pre-1999 DC 6260 "constitute[d] 'arbitrary

and capricious' rulemaking [because it] exclude[d] certain veterans from receiving compensation based on the way in which they incurred their service-connected disabilities"). Furthermore, in light of the regulatory history, the ambiguity as to the meaning of "persistent", and the Secretary's failure to include a manageable definition in the DC, the Court must resolve all reasonable interpretive doubt in favor of the veteran. *See Brown v. Gardner*, 513 U.S. 115, 118 (1994); *Allen (William) v. Brown*, 7 Vet.App. 439, 446 (1995) (en banc); *Kilpatrick v. Principi*, 16 Vet.App. 1, 6 (2002), *aff'd,* 327 F.3d 1375 (Fed. Cir. 2003); *see also Jones (Ethel) v. West*, 136 F.3d 1296, 1299 n.2 (Fed. Cir. 1998). Accordingly, the Court will order the Board on remand to award a rating of 10% and to assign an effective date pursuant to 38 U.S.C. § 5110.

The Court notes three additional matters. First, the Secretary's statement that the "[a]ppellant makes the alternative argument that the Court should remand his appeal in order that the Secretary consider the VCAA" and the Secretary's argument that there is "no basis" for such a remand (Br. at 11-13) are misplaced. Prior to the filing of the designation of the record, the Secretary himself filed a motion for a partial remand based on the VCAA; the appellant objected to such a remand, and the Court denied the Secretary's motion without prejudice. *Smith I*, *supra*. Second, the Court notes that any issue regarding the Board's statement that "the medical evidence is not at least in equipoise with respect to assigning an acoustic trauma etiology to the veteran's tinnitus", although that statement is questionable and likely carries no force in law (*see* R. at 161 (RO finding that "[r]easonable doubt has been resolved in favor of the claimant regarding acoustic trauma leading to tinnitus because of his assignment as a vehicle mechanic in service and his subjective history of assignment in combat to an artillery unit")), is moot in light of the invalidation of the trauma requirement in pre-1999 DC 6260. *See Wanner*, *supra*. Third, the Court notes the issuance on May 14, 2003, of a final VA regulation amending the current DC 6260, at "Note (2)", and providing for "only a single evaluation for recurrent tinnitus, whether the sound is perceived in one ear, both ears, or in the head." 68 Fed. Reg. 25,822 (May 14, 2003). This amendment does not alter the Board's obligation to apply *Wanner* here.

On the basis of the above analysis and the holdings in *Wanner*, *supra*, the Court (1) will reverse that part of the December 2000 Board decision that determined that the appellant's tinnitus was not "persistent" as required by pre-1999 DC 6260 and will remand the matter for assignment of a 10% rating and an appropriate effective date and (2) will vacate that part of the December 2000 Board decision that denied two ratings for the appellant's service-connected tinnitus, one for each ear, and will remand the matter for expeditious further development, if warranted, and issuance of a readjudicated decision supported by an adequate statement of reasons or bases, *see* 38 U.S.C. §§ 1110, 7104(a), (d)(1); 38 U.S.C. §§ 5103(a), 5103A, 5106, 5107, 5110; 38 C.F.R. §§ 4.25(b); 4.87, DC 6260 (2002); 4.87a, DC 6260 (1998); *DeSousa v. Gober*, 10 Vet.App. 461, 467 (1997); *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991), all consistent with *Wanner*, *supra*, and this order, and in accordance with section 302 of the Veterans' Benefits Improvements Act of 1994, Pub. L. No. 103-446, § 302, 108 Stat. 4645, 4658 (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims remanded by BVA or the Court) [hereinafter VBIA § 302]; *see Vargas-Gonzalez v. Principi*, 15 Vet.App. 222, 225-30 (2001) (holding that VBIA § 302 applies to all elements of a claim remanded by Court or Board), and with all applicable law and

regulation. *See Allday v. Brown*, 7 Vet.App. 517, 533-34 (1995). On remand, the appellant will be free to submit additional evidence and argument on the remanded claims in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order) (concluding that appellant is entitled, until 90 days after Board mails postremand notice to appellant, to submit additional evidence and argument or to request hearing on appeal, at which appellant may submit new evidence), and the Board is required to consider any such evidence and argument. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). A remand by this Court or by the Board confers on an appellant the right to VA compliance with the terms of the remand order and imposes on the Secretary a concomitant duty to ensure compliance with those terms. *See Stegall v. West*, 11 Vet.App. 268, 271 (1998). A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the Board's new final decision is mailed to the appellant. *See Marsh v. West*, 11 Vet.App. 468, 472 (1998).

Upon consideration of the foregoing, it is

ORDERED that the December 2000 BVA decision is REVERSED IN PART and VACATED IN PART and the matters are REMANDED for readjudication in accordance with the provisions of this order and pursuant to *Wanner*, *supra*.

DATED: June 10, 2003                                        PER CURIAM.