# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 01-623

ELLIS C. SMITH, APPELLANT,

V.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Remand from the U.S. Court of Appeals for the Federal Circuit

(Argued February 17, 2005                    Decided   April 5, 2005  )

*Ronald L. Smith*, with whom *Landon E. Overby* and *J. Marc Burgess* (nonattorney practitioners), all of Washington, D.C., were on the brief, for the appellant.

*John D. McNamee*, with whom *Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Brian B. Rippel*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief, for the appellee.

Before IVERS, *Chief Judge*, and STEINBERG and KASOLD, *Judges*.

STEINBERG, *Judge*, filed the opinion of the Court. IVERS, *Chief Judge*, filed an opinion concurring in part and dissenting in part.

STEINBERG, *Judge*:  Veteran Ellis Smith (the appellant), through counsel, seeks review of a December 12, 2000, decision of the Board of Veterans' Appeals (BVA or Board) that, inter alia, granted a Department of Veterans Affairs (VA) disability rating of 10% (but no higher) effective from June 10, 1999, for his service-connected tinnitus pursuant to 38 C.F.R. § 4.87, Diagnostic Code (DC) 6260, but denied a compensable rating prior to that date. Record (R.) at 3; *see* 38 C.F.R. § 4.87, DC 6260 (1999 & 2000). ("Tinnitus" is "a noise in the ears, such as ringing, buzzing, roaring or clicking." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY (DORLAND'S) 1714 (28th ed. 1994).) The parties each filed briefs, and the appellant filed a reply brief. (As discussed below, this appeal has already been the subject of a June 23, 2003, decision by this Court, *Smith v. Principi*, 17 Vet.App.

168 (2003) (per curiam order) (*Smith I*), which was reversed, and the matter was remanded, by the U.S. Court of Appeals for the Federal Circuit (Federal Circuit), *Smith v. Principi*, No. 03-7212, 2004 WL 2030123 (Fed. Cir. Aug. 23, 2004) (*Smith II*).) Thereafter, the Court ordered additional briefing from the parties, both parties filed responses, and the Court then heard oral argument in the case. At oral argument, the Court ordered further supplemental briefing on the issue of reversal regarding an earlier effective date, which had not been addressed by the parties. For the reasons set forth below, the Court will vacate the December 2000 BVA decision in part, reverse it in part, and remand the matters for proceedings consistent with this opinion.

## I. Relevant Background

The veteran had active service in the U.S. Army from March 1966 to March 1969, including service in the Republic of Viet Nam (R. at 21) where he reportedly was exposed to artillery fire. R. at 141. In 1994, he filed a claim with a VA regional office (RO) for service connection for, inter alia, bilateral hearing loss. R. at 69. Several VA audiological examinations were conducted in order to assess his claim. R. at 88, 101, 142, 244-45. A report from an April 1995 VA audiological examination, although inconclusive as to hearing loss, revealed that the veteran also had tinnitus; he described his tinnitus as "high pitched, periodic, and of mild to moderate severity", and as a condition that he had experienced "for the past 15 years". R. at 88. In May 1995, the RO, inter alia, granted service connection for hearing loss in the right ear (rated as noncompensable), and denied the tinnitus claim as not well grounded. R. at 92. The veteran submitted a Notice of Disagreement (NOD) as to that decision, and in October 1995 the RO, inter alia, awarded service connection for the veteran's tinnitus, rated as noncompensable, effective from April 1995 (R. at 172); the RO found that "the evidence show[ed] a diagnosis of tinnitus due to acoustic trauma", and that "[r]easonable doubt ha[d] been resolved in favor of the claimant regarding acoustic trauma leading to his tinnitus because of his assignment as a vehicle mechanic in service and his subjective history of assignment in combat to an artillery unit." R. at 170. However, the RO assigned a noncompensable disability rating on the ground that "the evidence [did] not show tinnitus which [was] persistent". R. at 170. The veteran filed an NOD as to, inter alia, the noncompensable rating for tinnitus. R. at 174.

At a 1997 hearing before the Board, the veteran provided sworn testimony that he had experienced the "ringing" in both his left and right ears for the past 15 years. R. at 244. In a November 1997 decision, the Board, inter alia, remanded the veteran's tinnitus claim to the RO for further development and to "assess the present severity of hearing loss in his left ear and bilateral tinnitus, since he indicated . . . that he had been experiencing frequent draining and ringing in his ears." R. 275. In April 1999, the RO issued a Supplemental Statement of the Case (SSOC) that, inter alia, continued a noncompensable rating for the veteran's service-connected tinnitus, because under DC 6260 "[a] noncompensable evaluation is assigned unless the record shows *persistent* tinnitus as a symptom of head injury, concussion, or acoustic trauma", and that the veteran had reported "*occasional*" tinnitus, not *persistent* tinnitus. R. at 289-92 (emphasis added).

On June 10, 1999, DC 6260 was revised to provide for a 10% rating for "[t]innitus, *recurrent*", and the requirement that, in order to be compensable, the tinnitus must have resulted from "head injury, concussion[,] or acoustic trauma" was deleted. 64 Fed. Reg. 25,202, 25,206 (May 11, 1999); 38 C.F.R. § 4.87, DC 6260 (1999 & 2004) (emphasis added). The veteran subsequently filed a Substantive Appeal as to the decision contained in the April 1999 SSOC; he asserted, inter alia, that his "service[-]connected tinnitus [was] still being evaluated under the old criteria, which required *persistent* symptoms rather than intermittent [sic] symptoms as the law now requires for a 10% evaluation." R. at 398 (emphasis added).

In the December 12, 2000, BVA decision here on appeal, the Board determined that the amended DC was more favorable than the pre-June 10, 1999, DC (hereinafter pre-1999 DC 6260) and applied that amended version to the veteran's claim, as of June 10, 1999 (R. at 6-7, 9); the Board concluded that prior to that date, the veteran had not satisfied the criteria for a 10% rating under pre-1999 DC 6260 because his tinnitus was not "persistent", which the Board defined as "insistently repetitive, *or* continuous, tenacious, *or* enduring". R. at 8 (emphasis added). He sought review of that decision in this Court (R. at 397), where his appeal was reviewed by a three-judge panel in 2003. *Smith I*, *supra*. At that time, he asserted, as he does today, (1) that his tinnitus "undeniably satisfie[d] the plain meaning of 'persistent'" in pre-1999 DC 6260 and that the Board's conclusion to the contrary was "legal error", and (2) that the Board had misinterpreted both pre-1999 and then-current DC 6260

3

when it had failed to award separate 10% disability ratings for each ear for his service-connected tinnitus. *Smith I*, 17 Vet.App at 169.

In *Smith I*, this Court, on June 10, 2003, ordered the December 12, 2000, BVA decision reversed in part and vacated in part. *Smith I*, 17 Vet.App at 173. As to the meaning of "persistent" in pre-1999 DC 6260, the Court held that "because 'persistent' and 'recurrent' appear to have overlapping definitions . . . the Board's conclusion that the appellant's tinnitus was not 'persistent' as required by pre-1999 DC 6260 was reached in a manner that was 'arbitrary, capricious, and an abuse of discretion'" and therefore must be reversed. *Smith I*, 17 Vet.App. at 171. As to the issue of separate tinnitus ratings for each ear, the Court held that this Court's precedential opinion in *Wanner v. Principi*, 17 Vet.App. 4 (2003) (*Wanner I*), *rev'd in part,* 370 F.3d 1124 (Fed. Cir. 2004) (*Wanner II*), "applies to the instant case and requires a remand for readjudication, in light of 38 C.F.R. § 4.25(b) (2002) [(requiring that "disabilities arising from a single disease entity . . . are to be rated separately")], of the appellant's claim for two 10% ratings." *Smith I*, 17 Vet.App. at 171. After the issuance of *Smith I*, the Secretary sought review of that decision in the Federal Circuit as to our action on the question of the interpretation of "persistent". On August 23, 2004, the Federal Circuit reversed, stating:

> [T]he decision on appeal relied heavily on the Court of Appeals for Veterans Claims [(CAVC)] decision in *Wanner* [*I, supra,*] in concluding that it had jurisdiction to review the [DC], which is included in the rating schedule. Thus, we reverse the [CAVC] determination in this case that it had jurisdiction and remand for further proceedings consistent with our decision in *Wanner* [*II, supra*].

*Smith II*, *supra*. In the *Wanner II* opinion, to which the above-quoted passage refers, the Federal Circuit reversed this Court's holding in *Wanner I*.

In *Wanner I*, this Court had concluded that it had jurisdiction to review DC 6260 for consistency with 38 U.S.C. § 1110 and that such an inquiry did not constitute a review of the rating schedule (which is prohibited by 38 U.S.C. § 7252(b)). After reaching that conclusion, this Court had then invalidated the trauma requirement contained in pre-1999 DC 6260 because it was "in violation of [the] statutory right" provided in section 1110, and therefore "not in accordance with law" pursuant to 38 U.S.C. § 7261(a)(3)(C) and (A), and because it was the product of "arbitrary and capricious" rulemaking pursuant to section 7261(a)(3)(A). *Wanner I,* 17 Vet.App. at 17-18. The second issue

4

that this Court addressed in *Wanner I* was whether the rating schedule allowed for the assignment of two 10% ratings for bilateral tinnitus. *Wanner*, 17 Vet.App. at 13. As to that issue, the Court held, inter alia, that by failing to address 38 C.F.R. § 4.25(b) (2002) the Board had failed to provide an adequate statement of reasons or bases for its determination that DC 6260 provides for only one 10% rating for bilateral tinnitus (rather than two, one for each ear). *Ibid*.

In its reversal of *Wanner I*, the Federal Circuit held in *Wanner II* that this Court's review of DC 6260 for consistency with section 1110 "amount[ed] to a direct review of the content of the rating schedule", and that, in conducting such a review, this Court had acted "outside of its jurisdiction as provided by 38 U.S.C. § 7252(b)". *Wanner II*, 370 F.3d at 1131. Although the Federal Circuit there reversed this Court's decision to strike the trauma requirement from pre-1999 DC 6260, there is no indication that that court intended to disturb our *Wanner I* reasons-or-bases remand for consideration of § 4.25(b). *Ibid*.

Likewise, in its review of *Smith I*, the Federal Circuit in *Smith II* indicated no intent to disturb our *Smith I* reasons-or-bases remand for readjudication in light of § 4.25(b). *See Smith II, supra*. The Federal Circuit issued its mandate in *Smith II* on October 14, 2004, and the matter is now back before this Court. *Ibid*. In preparation for the current re-review of this matter, this Court on November 2, 2004, ordered supplemental briefing from the parties to address the following two issues: (1) To show cause why the Court should not remand to the Board the matter of the rating under pre-1999 DC 6260 for the provision of an adequate statement of reasons or bases, *see* 38 U.S.C. § 7104(d)(1), as to the Board's determination of the meaning of "persistent" under that DC; and (2) to address the appellant's argument that 38 C.F.R. § 4.25(b) (1999) entitled him to separate ratings of 10% for tinnitus in each ear under DC 6260 (1998 & 1999).

## II. Contentions on Appeal

### A. Pre-1999 Rating

In its November 2, 2004, order, the Court directed the Secretary, inter alia, to

> show cause why the Court should not remand to the Board the matter of the rating under pre-1999 DC 6260 for the provision of an adequate statement of reasons or bases, *see* 38 U.S.C. § 7104(d)(1), as to the Board's determination of the meaning of "persistent" under that DC in light of the Board's having selectively paraphrased the Secretary's

5

Supplementa[ry] Information and not having taken into account all of the Secretary's relevant discussion therein, *see* 59 Fed. Reg. 17,295, 17,297 ([Apr.] 12, 1994), and having relied on a single dictionary definition of "persistent", *see Theiss v. Principi*, 18 Vet.App 204, 210-11 (2004) (criticizing General Counsel precedent opinion, on which Board had relied, for "selective use of a narrow set of definitions") . . . ; *see Smith I*, 17 Vet.App. at 170-71 . . . .

*Smith (Ellis) v. Principi*, 18 Vet.App. 448, 450 (2004) (per curiam order). In his December 2004 supplemental brief filed in response to the Court's November 2, 2004, order, the Secretary asserts that "the Court should remand the matter of the rating under pre-1999 DC 6260" so that the Board may provide an adequate statement of reasons or bases as to its "determination of the meaning of 'persistent' under that DC". Secretary's (Sec'y) Supplemental (Suppl.) Brief (Br). at 3. In his January 2005 supplemental brief, the appellant "concurs with the Secretary on this issue" and urges the Court to remand that issue. Appellant's (App.) Suppl. Br. at 2. However, at oral argument the appellant's counsel "clarified" to the Court that the appellant had not abandoned his argument for reversal on this ground. The Court then ordered from the bench that further supplemental briefs be submitted on the reversal question. That briefing was completed on March 24, 2005.

In his March 9, 2005, supplemental memorandum of law, the Secretary presents several arguments. First, he asserts that "[g]iven that the words 'persistent' and 'recurrent' and, by implication, the meaning of those terms, are inarguably a part of the ratings schedule, this Court lacks authority to review the matter." Sec'y Suppl. Memorandum (Mem.) at 6. In the alternative, he argues that, even if the Court possessed the authority to review VA's interpretation of those terms, the Court must defer to VA's interpretation because "an agency's interpretation of its own regulations must be given effect 'so long as the interpretation sensibly conforms to the purpose and wording of the regulations.'" *Id*. at 8. (citing *S. Cal. Edison Co. v. United States*, 226 F.3d 1349, 1356-57 (Fed. Cir. 2000) (quoting *Martin v. Occupational Safety and Health Review Comm'n*, 499 U.S. 144, 150 (1991))). As support for VA's interpretation of "persistent" in pre-1999 DC 6260, the Secretary asserts:

[F]rom 1945 until 1999 the Secretary's rating code for tinnitus provided that in order to be compensable, tinnitus had to be constant. The precise term used from 1945 was 'continuous' and from 1976 to 1999 it was 'persistent'. . . .

6

This requirement of persistence continued until the Secretary decided to liberalize the rating schedule as to tinnitus, replacing the requirement with a new, distinct term, "recurrent." As the Secretary noted in the 1994 commentary to the proposed rulemaking [(59 Fed Reg. at 17,297)], the deliberate change to the word "recurrent" encompassed a new meaning, "that tinnitus might not always be present, but that it does return at regular intervals." The Secretary's decision to revise the rating schedule was the culmination of a General Accounting Office study, which recommended that the rating schedule be reviewed and updated, recommendations by VA medical doctors and VA rating specialists, and recommendations by an outside consultant and panel of non-VA specialists on hearing and ear conditions, in order to update the schedule in accordance with the medical community's understanding of the impact of hearing disorders and other diseases. 59 Fed. Reg. at 17,295-96.

Suppl. Mem. at 4-5. Hence, the Secretary asserts that VA's interpretation "is an accepted and valid one," and that "[a]lthough there might be other definitions" for "persistent" and "recurrent", "[t]his Court is not free to substitute a different definition". *Id*. at 8-9. In response, the appellant contends that under *Sellers v. Principi*, 372 F.3d 1318 (Fed. Cir. 2004), "this Court ha[s] jurisdiction to review a VA interpretation of a regulation." App. Suppl. Mem. at 3-4. He asserts further that the authorities cited by the Secretary do not support his assertion that the Board's interpretation of a regulation is entitled to deference from this Court (*id*. at 4); rather, he contends that, although an agency's interpretation of a statute is entitled to deference, at the time of the Board decision here on appeal, as "[t]he Secretary conceded at oral argument[,] . . . there had been no interpretation of [DC] 6260 by VA or its General Counsel", and, therefore, there was then "nothing to which the Court could properly defer", *ibid*. The appellant seeks reversal on this issue.

### B. Separate Tinnitus Ratings

The appellant asserts that he is entitled to dual 10% ratings for tinnitus for essentially two reasons. First, he asserts that, pursuant to 38 C.F.R. § 4.25(b), "the general rule adopted by [] VA with respect to rating all disabilities is that each service-connected disability shall be separately rated and the ratings combined." App. Br. at 10. Hence, the appellant asserts that he "is entitled to have the tinnitus in his ears separately rated in accordance with § 4.25(b), unless the rating schedule provides an exception to the general rule." App. Br. at 10. The appellant states further:

7

When the Secretary intends to provide a single rating where a disability is either unilateral or bilateral, he provides for that single rating in unambiguous terms. . . . These provisions make clear that where the Secretary intends to make an exception to § 4.25 by limiting compensation to a single rating for a disability that is either unilateral or bilateral he knows how to do so. The Secretary having not provided a single rating for unilateral or bilateral tinnitus, separate ratings are required. *See* 38 C.F.R. § 4.25.

App. Br. at 12-13. Second, the appellant contends that "[w]hen called upon to construe an ambiguous statute providing benefits to veterans, the Court will apply the principle that 'interpretive doubt is to be resolved in the veteran's favor'" *Id*. at 11-12 (quoting *Brown v. Gardner* [hereinafter *Brown v. Gardner*], 513 U.S. 115, 118 (1994)). Hence, the appellant asserts, the "mandatory canon of construction enunciated in *Brown v. Gardner* and adopted by this Court in *McCormick* [*v. Gober*, 14 Vet.App. 39 (2000)] and *Ryan* [*v. West*], 13 Vet.App. 151 (1999) is directly applicable to this appeal." Br. at 12.

The Secretary contends that the appellant is not entitled to a tinnitus rating greater than 10% because the rating schedule does not allow for dual ratings of 10% for bilateral tinnitus. Specifically, the Secretary asserts:

The rating schedule is not ambiguous. It explicitly prohibits pyramiding of disability evaluations. Where separate ratings are permitted for like organs, the rating code explicitly provides for such. *See, e.g.*, 38 C.F.R. § 4.87, DC 6207 (Loss of auricle); [] § 4.115(b) (Testis, atrophy complete), and DC 7524 (Testis, removal); []§ 4.16, DC 7626 (Breast, surgery of). If the Secretary had intended to provide separate ratings for tinnitus in the schedule of ratings related to ears, he would have employed specific language to do so, as he did for rating disability of the auricles (DC 6207).

Sec'y Br. at 7. As support for his assertion, the Secretary points to the fact that VA amended the rating schedule, effective June 13, 2003, by adding to DC 6260 "Note 2", which provides: "Assign only a single evaluation for recurrent tinnitus, whether the sound is perceived in one ear, both ears, or in the head", 38 C.F.R. § 4.87, DC 6260 (2004). Suppl. Br. at 4. The Secretary asserts that "Note 2 did not change the way VA evaluates tinnitus . . . [; r]ather, the note was added to reflect VA's standard practice", and that "Note 2" would hence apply to claims filed prior to the June 2003 effective date of that amendment, such as in this case. *Ibid*. This position, according to the Secretary,

8

is consistent with VA General Counsel Precedent Opinion 2-2003 (May 13, 2003) [hereinafter G.C. Prec. 2-2003] and VA's Supplementary Information contained in the preambulatory language of the proposed and final rule amending DC 6260, 67 Fed. Reg. 59,033 (Sept. 19, 2002); 68 Fed. Reg. 25,822, 25,823 (May 14, 2003). Suppl. Br. at 3-4. According to those documents, VA does not consider Note 2 to be a "substantive change" but merely a clarification or "restatement" of that DC. As G.C. Prec. 2-2003 states:

> As was stated in the notice of proposed rulemaking: "This amendment involves no substantive change and is consistent with current practice." 67 Fed. Reg. at 59,033. Thus, the amendment restated in more explicit terms the rule reflected in prior VA regulations that only a single 10% rating for tinnitus is authorized regardless of whether tinnitus is perceived as unilateral, bilateral, or in the head.

G.C. Prec. 2-2003. The Secretary asserts further that the interpretation provided by Note 2 "is a reasonable interpretation based on the common medical definition of tinnitus and should be given deference by the Court". Suppl. Br. at 5. As support for this assertion, he cites to VA's Supplementary Information, published in conjunction with the proposed rule, which stated that "[t]rue tinnitus . . . appears to arise from the brain rather than the ears" and that true (subjective) tinnitus is "a central nervous system condition", 67 Fed. Reg. at 59,033. As the medical authority for this assertion regarding tinnitus being a central-nervous-system disorder, the Secretary cites to the Supplementary Information published in explanation of the proposed and final rule change. Suppl. Br. at 5 (citing 67 Fed. Reg. at 59,033 and 68 Fed. Reg. at 25,822). The Secretary then concludes:

> Because tinnitus is a central nervous system disorder, rather than a disorder of the ears, the sound that Mr. Smith perceives in each ear is in reality a single disability existing in his central nervous system. Section 4.25(b)'s reference to "disabilities arising from a single disease entity" has no application in this case because he has only a single disability, a disability of the nervous system.

*Ibid*. At oral argument, when asked what was the medical basis for the central-nervous-system thesis, the Secretary's counsel could not provide any citation to authority. Finally, the Secretary contends that VA's interpretation should control here because an agency's interpretation of its own regulation

is entitled to "substantial deference", unless that interpretation is "'plainly erroneous or inconsistent with the regulation.'" Suppl. Br. at 4 (quoting *Westberry v. Principi*, 255 F.3d 1377, 1382 (Fed. Cir. 2001)).

## III. Analysis

### *A. Applicable Law and Regulation*

At the time of the BVA decison here on appeal, section 1155 of title 38 of the U.S. Code provided, and provides now, in relevant part:

**§ 1155.  Authority for schedule for rating disabilities**

The Secretary shall adopt and apply a schedule of ratings of reductions in earning capacity from specific injuries or combination of injuries. The ratings shall be based, as far as practicable, upon the average impairments of earning capacity resulting from such injuries in civil occupations. The schedule shall be constructed so as to provide ten grades of disability and no more, upon which payments of compensation shall be based, namely, 10 percent, 20 percent, 30 percent, 40 percent, 50 percent, 60 percent, 70 percent, 80 percent, 90 percent, and total, 100 percent. The Secretary shall from time to time readjust this schedule of ratings in accordance with experience. However, in no event shall such a readjustment in the rating schedule cause a veteran's disability rating in effect on the effective date of the readjustment to be reduced unless an improvement in the veteran's disability is shown to have occurred.

38 U.S.C. § 1155.  Section 7252 of title 38 also provided then as it does now:

**§ 7252.  Jurisdiction; finality of decisions**

(b) Review in the Court shall be on the record of proceedings before the Secretary and the Board. The extent of the review shall be limited to the scope provided in section 7261 of this title. The Court may not review the schedule of ratings for disabilities adopted under section 1155 of this title or any action of the Secretary in adopting or revising that schedule.

38 U.S.C. § 7252(b).  At the time of the filing of the original claim that gave rise to the decision here on appeal, title 38 of the Code of Federal Regulations provided in relevant part:

**§ 4.25 Combined ratings table**

. . . .

  (b) Except as otherwise provided in this schedule, the diseases arising from a single disease entity, e.g., arthritis, multiple sclerosis, cerebrovascular accident, etc., are to be rated separately, as are all other disabling conditions, if any. All disabilities are then combined as described in paragraph (a) of this section. The conversion to the nearest degree divisible by 10 will be done only once per rating decision, will combine the rating of all disabilities, and will be the last procedure in determining the combined degree of disability.

* * * * *

**§ 4.87 Schedule of ratings— ear.**

DISEASES OF THE EAR
Rating

. . . .

6260 Tinnitus:
 Persistent as a symptom of head injury,
 concussion or acoustic trauma  10

Effective from June 10, 1999, the Secretary amended 6260 to provide:

6260 Tinnitus, recurrent    10

64 Fed. Reg. at 25,202; 38 C.F.R. § 4.87, DC 6260 (2000). Effective June 13, 2003, the Secretary added the following note at the end of DC 6260:

  NOTE (2): Assign only a single evaluation for recurrent tinnitus, whether the sound is perceived in one ear, both ears, or in the head.

68 Fed. Reg. at 25,822; 38 C.F.R. § 4.87, DC 6260 (2004).

11

### B. Pre-1999 Rating

### 1. Jurisdiction

In *Smith II*, the Federal Circuit reversed our determination that we had jurisdiction to review the Board's interpretation of "persistent" in DC 6260 because our "decision [had] relied heavily on [our] *Wanner I* decision", which the Federal Circuit had reversed in terms of its jurisdictional holding. *Smith II*, 2004 WL 2030123 at *1; *see Wanner I* and *Wanner II*, both *supra*. The Federal Circuit then remanded this case to us "for further proceedings consistent with [its] decision in *Wanner* [*II*]." *Smith II, supra*. In *Wanner II*, the Federal Circuit held that this Court did not have jurisdiction to invalidate the pre-1999 DC 6260 trauma requirement as inconsistent with 38 U.S.C. § 1110, as we had done in *Wanner I*, 17 Vet.App. at 18. *Wanner II*, 370 F.3d at 1131. The Federal Circuit also stated in *Wanner II*: "The Secretary's discretion over the [rating] schedule, including procedures followed and content selected, is insulated from judicial review with one recognized exception limited to constitutional challenges." *Ibid*. (language preceded by citation to *Johnson v. Robison*, 415 U.S. 361 (1974), for constitutional exception).

Nineteen days after *Wanner II* was decided, the Federal Circuit issued its opinion in *Sellers, supra*. In *Sellers*, the Federal Circuit, making no reference to its opinion in *Wanner II*, concluded that this Court had jurisdiction to review "the correct interpretation of [38 C.F.R. §] 4.130, specifically the relationship between the [*Diagnostic and Statistical Manual of Mental Disorders IV* (DSM-IV) (with which the preambulatory language in § 4.130 directs rating agencies to be "thoroughly familiar . . . [in order] to properly implement the general rating formula")] and the general rating formula" for mental disorders set forth at the end of § 4.130. *Sellers*, 372 F.3d at 1324. The Federal Circuit thrice distinguished the review undertaken there from review of "the content of the rating criteria", which "neither we nor the . . . Court [of Appeals for Veterans Claims] may review." *Ibid*. The dissenting judge in *Sellers* agreed with the majority's distinction between review of the Board's interpretation of a regulation, which is permissible, and the review of "the content of the ratings schedule", which is not, but disagreed that what the appellants sought there amounted to review of interpretation rather than of content. *Id*. at 1329.

Based on *Sellers*, we conclude that the review sought here by the appellant involves the Board's decision to interpret "persistent" in pre-1999 DC 6260 as requiring that tinnitus have an element of constancy in order to be compensable. The nature of that review is not distinguishable

from the review sought in *Sellers*, which the Federal Circuit characterized as involving the issue whether "the regulation [§ 4.130] requires that VA consider symptoms of [post-traumatic stress disorder (PTSD)] contained in the DSM-IV and make findings of fact as to whether a veteran suffered increased occupational and social impairment [(a criterion in the general rating formula)] as consequences of the severity of those [DSM-IV] symptoms." *Id*. at 1324. We recognize that the Federal Circuit's remand in *Smith II* for further proceedings here directed that we act in a manner "consistent with" *Wanner II* and did not refer to *Sellers*. However, we believe that we must read *Wanner II* in light of *Sellers*, and, so synthesizing the applicable precedents, we conclude that the issue before us today is the correct interpretation of a rating-schedule regulation, as in *Sellers*, and not a direct challenge to the content of a rating-schedule regulation, as in *Wanner II*. We note further that the Federal Circuit's remand in *Smith II* was premised on the fact that we had "relied heavily" on *Wanner I* in finding jurisdiction previously; in contrast, we rely now on the Federal Circuit's pronouncements in *Wanner II* and *Sellers*, for the holding that we have jurisdiction over the question presented by the appellant regarding the correct interpretation of "persistent" in the pre-1999 DC 6260.

### 2. Merits

As previously noted, the appellant seeks reversal of the Board's determination that he did not satisfy the "persistent" criterion for a 10% rating under pre-1999 DC 6260, but alternatively argues that the Board's statement of reasons or bases is inadequate and that the matter should be remanded. The Secretary agrees that the Board's statement of reasons or bases is inadequate (Suppl. Br. at 3) and at oral argument contended that the matter should be remanded but not reversed. For the following reasons, the Court agrees with the parties that the Board's statement of reasons or bases is inadequate and that the matter should be remanded so that the Board may provide an adequate statement of reasons or bases.

In his briefing to the Court, the Secretary notes that the Board decision in the instant case failed to explain adequately the basis for its interpretation of "persistent" as applied to the evaluation of tinnitus under pre-1999 DC 6260. Suppl. Br. at 3. The Board reached its decision (1) without referring to the Secretary's conclusion that an attribute of constancy was not well suited for rating a condition that , "under certain circumstances, comes and goes", 59 Fed. Reg. at 17,297; (2) by paraphrasing only selectively from the Secretary's 1994 Supplementary Information, *ibid*.; and (3) by

13

basing its conclusion solely on one dictionary definition of "persistent" (R. at 8). *See Theiss*, 18 Vet.App. at 210-11 (criticizing General Counsel precedent opinion, upon which Board had relied, for "selective use of a narrow set of definitions"); *see also Suozzi v. Brown*, 10 Vet.App. 307, 311 (1997) (holding that Secretary "defines 'corroboration' far too narrowly" in interpreting 38 C.F.R. § 3.304(f)). In this regard, the Court notes that "persistent" is defined generally as, inter alia, "continuing" and "constantly repeated", whereas "recurrent" is defined generally as, inter alia, "appearing or occurring again or periodically," WEBSTER'S NEW WORLD DICTIONARY 1007, 1123 (3d ed. 1988), and that the Secretary has provided no regulatory guidance as to the meaning of either "persistent" in pre-1999 DC 6260 or "recurrent" in current DC 6260; for example, neither is defined or explained in terms of the frequency required to satisfy the rating criteria. *Cf., e.g.*, 38 C.F.R. §§ 4.88b, DC 6354 (providing ratings for chronic fatigue syndrome based on specific degree and length of periods of incapacitation), 4.97, DC 6514 (providing ratings for sinusitis based on specific number, degree, and length of episodes), 4.114, DC 7305 (providing "mild", "moderate", "moderately severe", and "severe" ratings for ulcers based on specific frequency and length of symptoms) (2004).

In addition, the Board failed to address the Secretary's comments in the 1994 Supplementary Information (which explained the proposal (adopted in 1999) that changed "persistent" to "recurrent" and eliminated the trauma requirement) suggesting that the Secretary had concluded that, to the extent that "persistent" as used in the pre-1999 DC 6260 includes a meaning of "constant", it is unrealistic to use "persistent" for evaluating tinnitus, and that a meaning of occurring at "regular intervals" is the correct evaluation criterion. Specifically, the Secretary stated:

> The evaluation for tinnitus ([DC] 6260) currently requires that the condition be "persistent" in order to qualify for a 10 percent evaluation. Tinnitus is a subjective sensation which, under certain circumstances, comes and goes. The word "persistent" suggests a meaning of ["]constant["], and we propose to replace it with "recurrent," meaning that the tinnitus might not always be present, but that it does return at regular intervals. ***Requiring that tinnitus be "recurrent" will allow a realistic evaluation of the typical disablement from this condition.***

59 Fed. Reg. at 17,297 (emphasis added). Although the Secretary attempts to explain in his supplemental memorandum of law, without any supporting authority, that the "requirement of persistence was based, as far as practicable, upon the average impairment of earning capacity from

14

tinnitus as it was understood when the regulation was promulgated many years ago", and that "the rating schedule was readjusted to reflect advances in medical knowledge and to accord with evolving understandings of the average impairment of earning capacity occasioned by hearing loss and other conditions" (Suppl. Mem. at 10-11), the Board did not set forth any such rationale; it is not the task of the Secretary to rewrite the Board's decision through his pleadings filed in this Court. *See Wanless v. Principi*, 18 Vet.App. 337, 343 (2004) (Steinberg, J., concurring) (noting that "Court's role is to review whether the Board in its decision, rather than the Secretary in his brief, provided an adequate statement of reasons or bases"). Finally, the Board also failed to consider and apply, as appropriate, the basic canon of construction that "interpretive doubt is to be resolved in the veteran's favor" when a regulatory term is found to be ambiguous and there is no regulatory history to shed light on its meaning. *Brown v. Gardner*, 513 U.S. 115, 118 (1994); *see Otero-Castro v. Principi*, 16 Vet.App. 375, 380 (2002) (applying above *Gardner* rule to resolve ambiguity in DCs in favor of claimant).

Because of the Board's failure to address the above matters, the Court cannot adequately review the appellant's claim for reversal or otherwise carry out effective judicial review of the Board's denial of a compensable rating for his tinnitus under pre-1999 DC 6260. Accordingly, the matter will be remanded. *See* 38 U.S.C. § 7104(a), (d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995) (noting that Board is required to provide adequate written statement of reasons or bases for its findings and conclusions on all material issues of fact and law presented on record; statement must be adequate to enable claimant to understand precise basis for its decision, as well as to facilitate review in this Court); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990) (same).

### C.  *Relationship Between § 4.25(b) and DC 6260*

### 1.  *Jurisdiction*

Before we may consider the appellant's contentions regarding the correct interpretation of § 4.25(b), we must address the question of the Court's jurisdiction over this question. Again, we conclude that what the appellant has asked us to do here is not a direct review of the content of the rating schedule, which *Wanner II* and section 7252(b) proscribes, but rather a review of the Board's interpretation of two regulatory provisions and their interrelationship. This is exactly what was involved in *Sellers*, where the appellant was asserting that the § 4.130 language of the preambulatory general reference to the DSM-IV nomenclature required that the specific DSM-IV nomenclature pertaining to PTSD prevail over the "General Rating Formula for Mental Disorders" that applied to

PTSD under [38 C.F.R. § 4.130,] DC 9411 [2000,] as well as to 35 other specified mental disorders. *Sellers*, 372 F.3d at 1322 (characterizing appellant's contention as "that in . . . § 4.130 VA adopted the definition of PTSD contained in the DSM-IV" and thus VA must "look to the DSM-IV to properly determine whether a veteran has total occupational and social impairment that results from his or her service-connected [PTSD] disability"). Hence, we hold that we have jurisdiction to address the merits of the appellant's reversal contention on this issue.

### *2. Merits*

In this case, the Board concluded that "[t]he 10[%] rating being granted in this decision is the only schedular evaluation available for tinnitus, and there are no other diagnostic codes potentially applicable to this disorder." R. at 9. At oral argument, counsel for the Secretary represented that a remand on this issue would be pointless because the Board on remand would have to apply G.C. Prec. 2-2003, which concluded that under the DC for tinnitus (DC 6260) no more than a 10% rating was generally available. *See* 38 U.S.C. § 7104(c) (providing that Board bound to follow precedent opinions of the General Counsel). Accordingly, the Court will address the merits.

At the outset, we note that, although the Board is bound by the precedent opinions of the VA General Counsel, this Court is not so bound. *See, e.g.*, *Hatch v. Principi,* 18 Vet.App. 527, 531 (2004) (citing *Theiss*, 18 Vet.App at 210, *Cottle v. Principi*, 14 Vet.App 329, 335 (2001), and *Sabonis v. Brown*, 6 Vet.App 426, 429 (1994)); *see also* 38 U.S.C. §§ 7104(c), 7261. The Court reviews the Secretary's interpretation of law de novo. *See Hatch*, *supra*.

After reviewing the Secretary's analysis of the rating schedule with regard to tinnitus, the Court concludes that he failed to take account of a basic canon of construction, specifically, to look to the plain text of the regulation. "The basic principles that apply to construing statutes apply equally to construing regulations. 'The starting point in interpreting a statute is its language.'" *Otero-Castro*, *supra* (quoting *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993)) (internal citations omitted). Here, the Secretary's interpretation cannot stand because it conflicts with the plain meaning of the regluation. *See DeLuca v. Brown*, 8 Vet.App 202, 207 (1995) (holding that interpretation of regulation by VA that conflicted with plain meaning of regulation not entitled to deference) (citing *Combee v. Principi*, 4 Vet.App 78, 91 (1993) (quoting *Martin*, 499 U.S. at 151), *rev'd on other grounds sub. nom. Combee v. Brown*, 34 F.3d 1039 (Fed. Cir. 1994)).

The Secretary stresses that none of the provisions in the section of the rating schedule relating to ears address dual ratings, with the exception of DC 6207 regarding auricles, which specifically provides for different ratings depending on whether one or both auricles are a complete loss. From these observations, the Secretary derives the following interpretive principle:

> Where separate ratings are permitted for like organs, the rating code explicitly provides for such. *See, e.g.*, 38 C.F.R. § 4.87, DC 6207 (Loss of auricle); []§ 4.115(b) (Testis, atrophy complete), and DC 7524 (Testis, removal); []§ 4.16, DC 7626 (Breast, surgery of). If the Secretary had intended to provide separate ratings for tinnitus in the schedule of ratings related to ears, he would have employed specific language to do so, as he did for rating disability of the auricles (DC 6207).

Sec'y Br. at 7. Stated another way, the Secretary concludes that the drafters knew how to draft the regulations to specify when each ear should be rated separately and, further, that the absence of any such statement showed a clear intention to exclude individual ratings for each ear. R. at 8-9. An examination of the plain text of the regulation, however, reveals that dual ratings for tinnitus were not intended to be excluded.

As the appellant argues, § 4.25(b) provides the general rule for rating disabilities arising from a single disease entity. That regulation states: "***Except as otherwise provided in this schedule***, the disabilities arising from a single ***disease*** entity . . . ***are to be rated separately*** as are all other disabling conditions, if any. All disabilities then are to be combined [for rating purposes] . . . ." 38 C.F.R. § 4.25(b) (emphasis added). Accordingly, under the plain reading of the regulation, each service-connected disability arising from a single ***disease*** entity is to be rated separately, and the ratings combined, unless otherwise provided by the Secretary. *See Colayong v. West*, 12 Vet.App. 524, 531 (1999); *Esteban v. Brown*, 6 Vet.App. 259, 261 (1994).

Although the Secretary correctly states that "[n]either the prior nor the amended regulation contained any language suggesting that a separate tinnitus rating could be awarded for each ear", G.C. Prec. 2-2003, this is not the test. An examination of DC 6260 reveals that tinnitus is listed as a ***disease*** of the ear – making the provisions of § 4.25(b) applicable thereto as a "single disease entity" – and that the rating schedule contains no exception to § 4.25(b) regarding tinnitus; that is, nothing in the rating schedule limits a veteran with tinnitus in both ears to only one rating. The plain reading and application of § 4.25(b) and DC 6260 results in a rating of 10% for each ear affected by a single

case of tinnitus and then a combination of those ratings. There is no need to look further to discern the meaning of the regulation. "Where a statute's language is plain, and its meaning clear, no room exists for construction. There is nothing to construe." *Gardner v. Derwinski*, 1 Vet.App 584, 588 (1991), *aff'd sub nom*. *Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993), *aff'd*, 513 U.S. 115 (1994). "If the intent of Congress is clear, that is the end of the matter." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). The quoted language from *Gardner* and *Chevron* applies equally to regulations. *See Otero-Castro, supra*; *Savage v. Gober*, 10 Vet.App. 488, 495 (1997); *see also Lee v. West*, 13 Vet.App 388, 394 (2000).

Assuming, arguendo, that the regulation's language was not plain, the Court does not agree with the Secretary's contention that an examination of other DCs shows an intent of the drafters to exclude dual ratings unless the DC expressly provides for such dual rating. The Court has not found in other parts of the rating schedule support for the Secretary's basic assertion with regard to § 4.25(b). Although, on first impression, the rating schedule for loss of hearing, which provides expressly for dual ratings, seems to support the Secretary's assertion that "where separate ratings are permitted for like organs, the rating code explicitly provides for such", upon further examination, we conclude that support for that assertion is wanting. For example, 38 C.F.R. §§ 4.85 and 4.86, relating to "Evaluation of hearing impairment" and "Exceptional patterns of hearing impairment", both provide for dual ratings; however, both of these sections rate only *impairment* without regard to an underlying disease. *See* 38 C.F.R. §§ 4.85 and 4.86 (2004). Section 4.25(b), which by its very terms requires separate ratings for each *disability* arising from a single *disease* entity, does not apply to §§ 4.85 and 4.86, and the drafters thus were required to provide specifically for dual ratings if they wanted that result. Accordingly, §§ 4.85 and 4.86, which explicitly permit dual ratings for hearing loss, provide no insight into whether such ratings are permitted for disability ratings based on an ear *disease*.

The Secretary points to the fact that within the rating schedule for "Diseases of the Ear" in § 4.87a (which includes tinnitus), the schedule specifically provides a higher rating for the loss of both auricles as opposed to the loss of only one, where no such dual rating was specifically provided for the other diseases listed in that section, including tinnitus. Br. at 7-8. The Secretary concludes from this that the drafters of the schedule meant to preclude a dual rating for the other ear diseases in that section, including tinnitus. *Ibid*. Even if this interpretation was not contrary to the plain text of the regulation, which it is, it is still suspect. As previously noted, § 4.25(b) provides for separate

18

ratings for disabilities arising from a "single disease entity". If a distinct rating had not been provided for the loss of both auricles, the application of § 4.25(b) would have required a 30% rating for the loss of one ear and an additional 30% rating for the loss of the second ear; these would then have been combined with each other and with ratings for other disabilities. Instead, the drafters provided a rating of 30% for the complete loss of one auricle and 50% for the loss of both. The Court finds it more likely than not that these separate ratings were provided specifically to preclude the application of § 4.25(b), which would have resulted in a slightly higher combined rating of 51%, *see* 38 C.F.R. § 4.25(b) (Table I), than for the purpose of providing interpretative assistance in assessing whether a dual rating was required for a disability arising from the other ear diseases. (We note that, although 38 C.F.R. § 4.25(b) provides that a 51% rating is to be rounded to 50%, the rating schedule for loss of auricles does not reflect merely what would have been provided under 4.25(b). A 51% rating may potentially affect a claimant's disability rating when combined with ratings from other disabilities. As § 4.25(b) provides, the rounding procedure for reaching a combined rating will be applied only once, after all the ratings are combined. *See* 38 C.F.R. § 4.25(b).)

Finally, regarding the interpretation of the rating schedule, the schedule for diseases of the eye reveals that the drafters of the schedule knew exactly how to make exceptions from the application of § 4.25(b) for disabilities arising from a disease. For example, 38 C.F.R. § 4.84(a), DC 6011 (2004), specifically states that atrophy of the retina, a disease of the eye, is limited to only one rating, whether unilateral or bilateral. Such a limitation simply does not exist in the applicable DC for tinnitus (DC 6260), and it appears doubtful that one could be added to the detriment of the veteran once he filed his claim, either by interpretative analysis or amended regulation. *See Fortuck v. Principi*, 17 Vet.App 173, 178 (2003); *Karnas v. Derwinksi*, 1 Vet.App 308, 312-13 (1991), *overruled in part on other grounds by Kuzma v. Principi*, 341 F.3d 1327, 1329 (Fed. Cir. 2003); *see also* 38 U.S.C. § 1155 (stating that Secretary may not revise rating schedule so as to reduce veteran's disability rating then in effect unless an improvement in veteran's disability is shown).

As to the Secretary's assertion that Note 2 "involves no substantive change" and that "the amendment restated in more explicit terms the rule reflected in prior VA regulations that only a single 10% rating for tinnitus is authorized", this interpretation not only is inconsistent with the plain meaning of the applicable regulation in this case, but also the support for this assertion is flawed.

19

Both the Secretary and the General Counsel quote the Supplementary Information published in the Federal Register at the time of the promulgation of the final rule, which stated in relevant part:

> To rate each ear separately for this single disability would violate the prohibition on pyramiding, 38 CFR 4.14. Similarly, to rate each ear separately would be a violation of the principle of 38 CFR 4.25(b) that a "***single disease entity" is to be given a single rating.*** A single evaluation for a single disability is appropriate. We have made no change based on this comment.

68 Fed. Reg. at 25,823 (emphasis added). The above-quoted passage misstates the law. In fact, this passage states nearly the opposite of what § 4.25(b) provides, which is that "the ***disabilities arising from a single disease entity . . . are to be rated separately***". 38 C.F.R. § 4.25(b) (emphasis added). Hence, pursuant to the review standard set forth in *Westberry*, the Court owes no deference to such an interpretation, because it is both "plainly erroneous" and "inconsistent with [VA]'s own regulation" as provided in § 4.25(b). *Westberry*, *supra*.

The Secretary asserts (both in his brief and at oral argument) that the policy embodied in Note 2 had been the "standard practice" for VA "since 1945", and that VA's interpretation of DC 6260 – that such a policy had always been a part of the tinnitus rating – should be given deference by the Court because it is "reasonable" and "based on the common medical definition of tinnitus". Suppl. Br. at 5. However, the Secretary concedes (also at oral argument) that neither the "standard practice" of awarding only a single 10% rating for tinnitus nor the "common medical definition of tinnitus" that considered that condition a disability of the central nervous system, was set forth in a publicly available document before VA's proposed rule in 2002. Hence, even if the regulations in this case were ambiguous, the Court would find the argument that Note 2 embodied either a "standard VA practice" or an established agency policy based on a "common medical definition" to be unpersuasive. As the Secretary also conceded at oral argument, the paucity of information in regard to this "standard VA practice" available prior to the Board's December 2000 decision in this case distinguishes this case from *Smiley v. Citibank*, 517 U.S. 735 (1996), which affirmed the validity of an agency regulation that had formally recognized a longstanding agency interpretation. Unlike in the instant case, in *Smiley*, the agency had a publicly available track record of having interpreted an ambiguous term in a manner consistent with the new regulation. Finally, to the extent that there is any reasonable interpretive doubt regarding the meaning of § 4.25(b) and its application to DC 6260, and given the

lack of any publicly available agency interpretative history on this matter, such doubt is to be resolved in favor of the veteran. *See Brown v. Gardner*, 513 U.S. at 117-18; *Allen (William) v. Brown*, 7 Vet.App. 439, 446-48 (1995) (en banc) (applying *Gardner* "interpretive doubt" rule); *Otero-Castro*, *supra*.

Based on the plain language of the regulations, the Court holds that the pre-1999 and pre-June 13, 2003, versions of DC 6260 required the assignment of dual ratings for bilateral tinnitus. In light of this holding, the Court will reverse as "not in accordance with law", 38 U.S.C. § 7261(a)(3)(A), the Board's conclusion that "[t]he 10[%] rating being granted . . . is the only schedular evaluation available for tinnitus", set aside the determination that no higher rating is available to the appellant, and remand that matter for further proceedings consistent with this opinion.

### III. Conclusion

Upon consideration of the parties' pleadings, oral argument, and the forgoing analysis, the Court reverses the December 2000 BVA decision that bilateral tinnitus may not qualify for two 10% ratings, one for each ear, and remands that matter for expeditious readjudication as to whether the appellant has bilateral tinnitus, and, if so, for assignment of a rating consistent with this opinion. Additionally, the Court vacates the December 2000 BVA decision with respect to the Board's decision to interpret "persistent" in pre-1999 DC 6260 as requiring an element of constancy, and remands that matter for readjudication and for consideration of our holding regarding § 4.25(b) to pre-1999 DC 6260. Furthermore, the Court invalidates G.C. Prec. 2-2003 to the extent that it is inconsistent with § 4.25(b) and pre-June 2003 DC 6260 as herein construed. On remand, the Secretary will ensure expeditious appropriate further development and issuance of a readjudicated decision supported by an adequate statement of reasons or bases, *see* 38 U.S.C. §§ 1110, 5100-5103, 5103A, 5107, 7104(a), (d)(1); 38 C.F.R. § 4.25(b), 4.87, DC 6260 (pre-1999 and pre-June 13, 2003), all consistent with this opinion and in accordance with 38 U.S.C. § 7112 (as added by the Veterans Benefits Act of 2003, Pub. L. No. 108-183, § 707(b), 117 Stat. 2651, 2673) (requiring Secretary to "take such actions as may be necessary to provide for the expeditious treatment by the Board of any claim that is remanded to the Secretary by the Court"); *see Vargas-Gonzalez v. Principi*, 15 Vet.App. 222, 225-30 (2001) (holding that section 302 of Veterans' Benefits Improvements Act of 1994, Pub. L. No. 103-446, § 302, 108 Stat. 4645, 4658, predecessor of section 7112, applies to all elements of claim remanded

by the Court or Board), and in accordance with all applicable law and regulation. *See Allday*, 7 Vet.App. at 533-34. On remand, the appellant will be free to submit additional evidence and argument on the remanded claims, and the Board is required to consider any such evidence and argument. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). A remand by this Court or by the Board confers on an appellant the right to VA compliance with the terms of the remand order and imposes on the Secretary a concomitant duty to ensure compliance with those terms. *See Stegall v. West*, 11 Vet.App. 268, 271 (1998). A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the Board's new final decision is mailed to the appellant. *See Marsh v. West*, 11 Vet.App. 468, 472 (1998).

REVERSED IN PART, VACATED IN PART, AND REMANDED.


IVERS, *Chief Judge*, concurring in part and dissenting in part: I must respectfully dissent from the majority opinion with respect to the issue of the Court's jurisdiction as discussed in III.B.1. The Court has jurisdiction to determine its jurisdiction over a case. *See Henderson v. West*, 12 Vet.App. 11 (1998). In my view, the majority's decision to remand the question of the appellant's entitlement to a compensable rating under the pre-1999 DC 6260 is outside this Court's jurisdiction pursuant to 38 U.S.C. §§ 502 and 7252(b) and contrary to the Federal Circuit's decisions in *Wanner v. Principi*, 370 F.3d 1124 (Fed.Cir. 2004)(*Wanner II*) and *Smith v. Principi*, No. 03-7212, 2004 WL 2030123 (Fed. Cir. Aug. 23, 2004)(*Smith II*).

In the case underlying the appeal before us, the Federal Circuit granted the Secretary's motion to vacate and remand this Court's decision in *Smith v. Principi*, 17 Vet.App. 168 (2003)(*Smith I*) as inconsistent with *Wanner II*. *See Smith II.* In so doing, the Federal Circuit stated:

> In *Wanner* [*II*], we reversed the Court of Appeals for Veterans Claims' determination that it had jurisdiction to review the rating schedule, absent a constitutional challenge. In the instant case, the decision on appeal relied heavily on the Court of Appeals for Veterans Claims' *Wanner* decision [*Wanner v. Principi*, 17 Vet.App. 4 (2003)(*Wanner I*)] in concluding that it had jurisdiction to review the Diagnostic Code, which is included in the ratings schedule. Thus, we reverse the Court of Appeals for Veterans Claims' determination in this case that it had jurisdiction and remand for further proceedings consistent with our decision in *Wanner* [*II*].

22

*Smith II,* at \*2.  In concluding that this Court did not have jurisdiction to review the ratings schedule, the Federal Circuit in *Wanner II* reviewed the jurisdictional provisions of title 38, 38 U.S.C. §§ 502 and 7252(b).  370 F.3d at 1129.  Section 502 specifically excludes from judicial review by this Court actions of the Secretary "relating to the adoption or revision of the schedule of ratings for disabilities adopted under section 1155 of this title."  38 U.S.C. § 502; *see also id.*  In addition, section 7252(b) states that this Court "may not review the schedule of ratings for disabilities adopted under section 1155 of this title *or any action of the Secretary in adopting or revising that schedule.*"  38 U.S.C. § 7252(b) (emphasis added); *see also id.*  Noting that "the clarity of the legislative scheme makes resort to the legislative history [of the Veterans Judicial Review Act, Pub. L. No. 100-687, 102 Stat. 4105 (1988)] unnecessary," the Federal Circuit added:

> Senate Report 100-418 explains: "The Committee bill contains one restriction on the scope of review of VA rules and regulations: *A court would not be permitted to direct or otherwise order that any part of the disability rating schedule issued or adopted by the Administrator be modified.*" . . . A report from the House of Representatives reflects a similar understanding, explaining that, in response to "apprehension . . . that the VA schedule for rating disabilities. . . would be destroyed by piecemeal review of individual rating classifications," the bill "*has expressly precluded review of the schedule* . . . ." H.R. Rep. 100-963 at 28.  The language in the legislative history is not limited to the percentages of the disability ratings . . . but matches the statutes in broadly precluding judicial review of the contents of the disability rating schedule in toto.

370 F.3d at 1130 (emphasis added).  The Federal Circuit concluded that the "review undertaken by the Veterans Court here amounts to a direct review of the content of the rating schedule" and "was an action outside of its jurisdiction as provided by 38 U.S.C. § 7252(b)."  370 F.3d at 1131.

The majority presently claims that it is not reviewing the contents of the rating schedule, but "the Board's interpretation of 'persistent' in pre-1999 DC 6260," and, consequently, this review is "not distinguishable from the review sought in *Sellers*."  *Ante* at 10.  However, the Court's analysis here moves well beyond the interpretation of the ratings criteria as discussed in *Sellers*.  In that case, the Federal Circuit upheld this Court's "interpretation of 38 C.F.R. § 4.130 with respect to the relationship between the DSM-IV and the general rating formula."  372 F.3d at 1321.  With respect to the issue of this Court's jurisdiction, the Federal Circuit focused on the character of the arguments raised by the appellants: "Appellant's are challenging VA's interpretation of a regulation.  The Veterans Court, therefore, had jurisdiction under 38 U.S.C. § 7252(a)."  372 F.3d at 1324.

The crucial difference between *Sellers* and this case is that the appellants in *Sellers* were not challenging the content of the ratings schedule insofar as the ratings schedule reflected the medically recognized symptoms of PTSD. The Secretary's instruction that "[r]ating agencies must be thoroughly familiar with [the DSM-IV] to properly . . . apply the general rating formula for mental disorders in [section] 4.130" established an ambiguous relationship between the ratings criteria for PTSD and DSM-IV. The Court interpreted the limits of that relationship without reviewing "any action of the Secretary in adopting or revising that schedule." 38 U.S.C. § 7252(b).

While cloaking their actions in the reasons-and-bases rubric, the majority here dives directly into the content of the ratings schedule by evaluating the meaning of "persistent" in the pre-1999 DC 6260 and "recurrent" in the current DC 6260 against the medical definition of tinnitus. By proposing to examine the reasonableness of the terms "persistent" and "recurrent" as accurate symptoms of tinnitus, the Court is announcing its intent to directly review the contents of the ratings schedule and infringing on the Secretary's authority under 38 U.S.C. § 1155 to "adopt and apply a schedule of ratings of reductions in earning capacity from specific injuries or combination of injuries." *Sellers* is inapplicable in this case because the majority, in "interpreting" the meaning of "persistent" in the pre-1999 DC 6260 and "recurrent" in the current DC 6260, would engage in a "review [of] the schedule of ratings for disabilities adopted under section 1155 of this title or any action of the Secretary in adopting or revising that schedule." 38 U.S.C. § 7252(b). The Federal Circuit's language in *Wanner II* is instructive: "The review undertaken by the Veterans Court here amounts to a direct review of the contents of the rating schedule and is indistinguishable from the review of 'what should be considered a disability' that the Veterans Court itself recognized as impermissible." 370 F.3d at 1131.

Moreover, it is irrelevant for jurisdictional purposes that the Court is remanding the issue to the Board. If the Court had jurisdiction, it would merely be postponing an eventual judicial review of an action "relating to the adoption or revision of the schedule of ratings for disabilities adopted under section 1155 of this title." 38 U.S.C. § 502. The only appropriate course of action in this case is to dismiss the claim as outside the Court's jurisdiction pursuant to 38 U.S.C. §§ 502 and 7252(b), and the Federal Circuit's decisions in *Wanner II* and *Smith II*.

24