Citation Nr: 1331576 
Decision Date: 09/30/13 Archive Date: 10/02/13

DOCKET NO. 08-36 809A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Oakland, California


THE ISSUE

Entitlement to service connection for burn scars on the legs.


REPRESENTATION

Veteran represented by: California Department of Veterans Affairs


WITNESSES AT HEARING ON APPEAL

The Veteran; his spouse just observed


ATTORNEY FOR THE BOARD

A. Larson, Associate Counsel


INTRODUCTION

The Veteran had active military service from February 1970 to February 1972.

This appeal to the Board of Veterans' Appeals (Board) is from a July 2007 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO).

In October 2012, as support for his claim, the Veteran testified at a hearing at the RO before the undersigned Veterans Law Judge of the Board. This type of hearing is often and more commonly referred to as a Travel Board hearing. His wife also attended the hearing but just observed.

The Board remanded this claim in April 2013 for further development, also an additional claim of entitlement to service connection for tinnitus. The additional development of these claims especially included scheduling VA Compensation and Pension examinations for medical nexus opinions regarding the etiologies of these alleged disabilities. The Veteran had these VA Compensation and Pension Examinations in May 2013 (for his burn scars) and June 2013 (for his tinnitus), and the medical nexus opinions obtained are responsive to this determinative issue of causation. Thus, there was compliance with this remand directive. See Stegall v. West, 11 Vet. App. 268, 271 (1998) (where the remand orders of the Board are not complied with, the Board itself errs as a matter of law when it fails to ensure compliance).

After considering the results of those VA Compensation and Pension Examinations and, in particular, the medical opinions obtained, the Appeals Management Center (AMC) issued a July 2013 rating decision granting the claim of entitlement to service connection for tinnitus. The AMC assigned a 10 percent disability rating for the tinnitus, retroactively effective from June 15, 2006, so back to the date of receipt of this claim. This is the highest possible schedular rating for this condition. See 38 C.F.R. § 4.87, Diagnostic Code (DC) 6260 (2013); Smith v. Nicholson, 19 Vet. App. 63 (2005), aff'd Smith v. Nicholson, 451 F.3d 1344 (Fed. Cir. 2006). There equally is no possibility of receiving any earlier effective date. 38 U.S.C.A. § 5110 (West 2002 & Supp. 2012); 38 C.F.R. § 3.400 (2013). And, in any event, the Veteran has to separately appeal these "downstream" issues, which he apparently has not because there is no additional benefit to be had. See Grantham v. Brown, 114 F.3d 1156, 1158-59 (Fed. Cir. 1997) (where an appealed claim for service connection is granted during the pendency of the appeal, a second Notice of Disagreement (NOD) thereafter must be timely filed to initiate appellate review of the claim concerning "downstream" issues such as the compensation level assigned for the disability and effective date).

The AMC also issued a Supplemental Statement of the Case (SSOC) in July 2013, however, continuing to deny his remaining claim of entitlement to service connection for burn scars on his legs. So this claim is again before the Board.


FINDINGS OF FACT

1. The Veteran has 13 total scars on his legs.

2. But he has not established that these scars resulted from his service, including especially from being burned.


CONCLUSION OF LAW

It is not shown he has burn scars on his legs on account of disease or injury incurred in or aggravated by his active military service. 38 U.S.C.A. §§ 1110, 1154(a), 5107(b) (West 2002); 38 C.F.R. §§ 3.102, 3.159, 3.303 (2013).



REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Procedural Duties

The Veterans Claims Assistance Act of 2000 (VCAA), codified in part at 38 U.S.C.A. §§ 5103, 5103A, and implemented in part at 38 C.F.R. § 3.159, amended VA's duties to notify and assist a claimant in developing information and evidence necessary to substantiate a claim.

To satisfy its duty to notify, upon receipt of a complete or substantially complete application for benefits, VA must inform the claimant of the: 1) information and evidence that is necessary to substantiate the claim; 2) information and evidence that VA will obtain; and 3) information and evidence he is expected to provide. See 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b). See also Quartuccio v. Principi, 16 Vet. App. 183 (2002); Beverly v. Nicholson, 19 Vet. App. 394, 403 (2005).

When the claim is for service connection, this notice should address all five elements of the claim: 1) Veteran status; 2) existence of disability; 3) a connection between the Veteran's service and the disability; but also the "downstream" 4) degree of disability, i.e., disability rating; and 5) effective date in the eventuality service connection is granted. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006), aff'd sub nom. Hartman v. Nicholson, 483 F.3d 1311 (2007).

Also, ideally, this notice should precede the initial adjudication of the claim. Pelegrini v. Principi, 18 Vet. App. 112, 119 (2004) (Pelegrini II). If, however, for whatever reason it did not, or the notice provided was inadequate or incomplete, this timing error can be effectively "cured" by providing all necessary VCAA notice and then readjudicating the claim - including in a Statement of the Case (SOC) or Supplemental SOC (SSOC) - such that the intended purpose of the notice is not frustrated and the Veteran is given an opportunity to participate effectively in the adjudication of the claim. See Mayfield v. Nicholson, 499 F.3d 1317, 1323 (Fed. Cir. 2007); Prickett v. Nicholson, 20 Vet. App. 370, 376 (2006). 


The U. S. Supreme Court has made clear that VCAA notices errors, even when shown to have occurred, are not presumptively prejudicial, rather, must be judged on a case-by-case basis. And as the pleading party attacking the agency's decision, the Veteran, not VA, has this burden of proof of not only establishing error, but also, above and beyond that, showing how it is unduly prejudicial, meaning outcome determinative of the claim. See Shinseki v. Sanders, 129 S. Ct. 1696 (2009).

Here, the Veteran was provided a letter in July 2006 containing all of the notification required by 38 C.F.R. § 3.159, as defined by Dingess and Pelegrini. The letter also was provided prior to the initial adjudication of his claim, so in the preferred sequence. Furthermore, he was furnished specific Dingess notice in October 2008 and May 2009, and his claim since has been readjudicated, including most recently in the July 2013 SSOC. Thus, the Board concludes that the duty to notify has been met.

To satisfy its duty to assist, VA must make reasonable efforts to assist the claimant in obtaining evidence necessary to substantiate the claim. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c). This includes assisting the claimant in obtaining necessary medical examinations and opinions. Id. In disability compensation 
(service-connection) claims, VA must provide a medical examination when there is: (1) competent evidence of a current disability or persistent or recurrent symptoms of a disability, (2) evidence establishing that an event, injury, or disease occurred in service or establishing certain diseases manifesting during an applicable presumptive period for which the claimant qualifies, and (3) an indication the disability or persistent or recurrent symptoms of a disability may be associated with the Veteran's service or a service-connected disability, but (4) insufficient competent medical evidence on file for VA to make a decision on the claim.. 38 U.S.C.A. § 5103A(d)(2); 38 C.F.R. § 3.159(c)(4). See also McLendon v. Nicholson, 20 Vet. App. 79, 81 (2006). The Court has clarified that the third element of McLendon establishes a "low threshold" and requires only that the evidence "indicates" that there "may" be a nexus between the current disability or symptoms and the Veteran's service. The types of evidence that "indicate" that a current disability "may be associated" with military service include, but are not limited to, medical evidence suggesting a nexus, but that is too equivocal or lacking in specificity to support a decision on the merits; or credible evidence of continuity of symptomatology such as pain or other symptoms capable of lay observation. Id. See also Waters v. Shinseki, 601 F.3d 1274 (Fed. Cir. 2010) (While there must be "medically competent" evidence of a current disability, "medically competent" evidence is not required to indicate the current disability may be associated with service. When determining whether a VA examination and opinion are required under 38 U.S.C. § 5103A(d)(2), the law requires competent evidence of a disability or persistent or recurrent symptoms of a disability, but does not require competent evidence of a nexus, only that the evidence suggest an association between the disability and service or a service-connected disability.).

In this case, the Board concludes that the duty to assist also has been met. The Veteran's service treatment records (STRs) have been obtained, as have his post-service VA and private treatment records. Also, as a result of the Board remanding this claim in April 2013, he was given an appropriate VA Compensation and Pension examination to identify all current scars on his legs and for a medical nexus opinion regarding their etiology, but especially in terms of the likelihood they are related or attributable to his military service and, in particular, to burns. This critical determination was made after reviewing the entire claims folder for the pertinent history, and the VA examiner's opinion is responsive to these determinative issues of whether there is current disability and, assuming so, the cause of it in relation to the Veteran's military service. So, as already alluded to, there was compliance with this remand directive, certainly what could be considered acceptable substantial compliance. See D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); Dyment v. West, 13 Vet. App. 141, 146-47 (1999); and Chest v. Peake, 283 Fed. App. 814 (Fed. Cir. 2008). There is no indication there is any relevant evidence that is still outstanding, so needing to be obtained.


In deciding this claim, the Board has reviewed all of the relevant evidence in the claims file, both the physical claims file and electronic ("Virtual VA") file. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that the evidence submitted by the Veteran or obtained on his behalf be discussed in exhaustive detail. Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate the claim and what the evidence in the claims file shows, or fails to show, with respect to the claim. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) and Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000).

Merits of the Claim

The Veteran contends that scars on both of his lower legs are the results of burns received during his time in the Navy.

A Veteran will be considered to have been in sound condition when examined, accepted and enrolled for service, except as to defects, infirmities, or disorders noted at entrance into service, or where clear and unmistakable evidence demonstrates that an injury or a disease existed prior thereto. This presumption attaches only where there has been an induction examination in which the later complained-of disability was not detected ("noted"). See Bagby v. Derwinski, 1 Vet. App. 225, 227 (1991). Only such conditions as are recorded in examination reports are to be considered as noted. 38 U.S.C.A. § 1111; 38 C.F.R. § 3.304(b).

Since the Veteran's 13 burn scars were not observed or otherwise noted during his military entrance examination, it must be presumed he did not have them when entering service. It still has to be shown that he has them because of his service, however. See Watson v. Brown, 4 Vet. App. 309, 314 (1993) ("A determination of service connection requires a finding of the existence of a current disability and a determination of a relationship between that disability and an injury or a disease incurred in service.").


Service connection is granted for disability resulting from personal injury sustained or disease contracted in the line of duty during active military service, or for aggravation during service of a pre-existing condition, meaning for a permanent worsening of the condition above and beyond its natural progression. 38 U.S.C.A. §§ 1110, 1153; 38 C.F.R. §§ 3.303, 3.306.

"To establish a right to compensation for a present disability, a Veteran must show: '(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or an injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service - the so-called 'nexus' requirement.'" Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2010) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)).

There is an alternative path to service connection using a presumption. Presumptive service connection is available to Veterans who suffer from certain chronic disorders and diseases that manifest during service or within one year after service to the required minimum compensable degree of at least 10-percent disabling. See 38 U.S.C.A. §§ 1101, 1112, 1113; C.F.R. §§ 3.307, 3.309(a). If the conditions to presumptive service connection cannot be said to be "chronic" in the medical sense, a Veteran may still yet succeed if he can show a continuity of symptomotology under 38 C.F.R. § 3.303(b), but only assuming his condition is one listed in § 3.309(a). Walker v. Shinseki, 708 F.3d 1331, 1339 (Fed. Cir. 2013). However, burn scars are not a disability that is afforded the presumptive service connection via the regulation, so that avenue is not available to the Veteran here. 

With regards to any medical evidence, a diagnosis or opinion by a health care professional is not conclusive and is not entitled to absolute deference. Indeed, the Court has provided guidance for weighing medical evidence. The Court has held, for example, that in meeting our responsibility to weigh the credibility and probative value of the evidence, we may accept one medical opinion and reject others. Schoolman v. West, 12 Vet. App. 307, 310-11 (1999); Evans v. West, 12 Vet. App. 22, 30 (1998) (citing Owens v. Brown, 7 Vet. App. 429, 433 (1995)). 

However, the Board is mindful that it cannot make its own independent medical determinations, and that it must have plausible reasons based upon medical evidence in the record for favoring one medical opinion over another. Rucker v. Brown, 10 Vet. App. 67, 74 (1997) (citing Colvin v. Derwinksi, 1 Vet. Appl. 171 (1991)). Thus, the weight to be accorded the various items of evidence in this case must be determined by the quality of the evidence and not necessarily by its quantity or source. 

In determining the probative value to be assigned to a medical opinion, the Board must consider three factors. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008). The initial inquiry in determining probative value is to assess whether a medical expert was fully informed of the pertinent factual premises (i.e., medical history) of the case. A review of the claims file is not required, since a medical professional can also become aware of the relevant medical history by having treated a Veteran for a long period of time or through a factually accurate medical history reported by a Veteran. See Id. at 303-04.

The second inquiry involves consideration of whether the medical expert provided a fully articulated opinion. See Id. A medical opinion that is equivocal in nature or expressed in speculative language does not provide the degree of certainty required for medical nexus evidence. See McLendon v. Nicholson, 20 Vet. App. 79 (2006).

The third and final factor in determining the probative value of an opinion involves consideration of whether the opinion is supported by a reasoned analysis. The most probative value of a medical opinion comes from its reasoning. Therefore, a medical opinion containing only data and conclusions is not entitled to any weight. In fact, a review of the claims file does not substitute for a lack of a reasoned analysis. See Nieves-Rodriguez, 22 Vet. App. at 304; see also Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007).


The Federal Circuit Court has held that "[l]ay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical profession." Jandreau v. Nicolson, 451 F.3d 1331, 1337 (Fed. Cir. 2006) ("[T]he Board cannot determine that lay evidence lacks credibility merely because it is unaccompanied by contemporaneous medical evidence." Citing Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006)). However, a Veteran is not competent to provide evidence as to more complex medical questions. See Woehlaert v. Nicholson, 21 Vet. App. 456 (2007).

Once evidence is determined to be competent, the Board must determine whether such evidence is also credible. See Rucker v. Brown, 10 Vet. App. 67, 74 (1997) and Layno v. Brown, 6 Vet. App. 465, 469 (1994) ("[Competency] is a legal concept determining whether testimony may be heard and considered by the trier of fact, while [credibility] is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted.")

In order to grant a Veteran's claim of entitlement to service connection for an alleged disability, VA must examine the evidence and determine whether the claim is supported or the evidence for and against it is in relative equipoise, meaning about evenly balanced, with the Veteran prevailing in either event, or whether instead a preponderance of the evidence is against the claim, in which case the claim must be denied. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102. See also Gilbert v. Derwinski, 1 Vet. App. 49 (1990). When there is an approximate balance of positive and negative evidence regarding any issue material to the documentation of a matter, VA shall give the benefit of the doubt to the Veteran. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.

The Veteran explains, including during his Travel Board Hearing, that while serving aboard the USS Robert L. Wilson he was a gunner's mate, working in the turret itself. He indicates that he participated in "live fire" exercises while aboard the ship in the Guantanamo Bay in 1971, firing torpedoes, depth charges, and 
anti-craft rounds for drones. He recalls these exercises lasting pretty much all day. 

His DD Form 214 reveals that his military occupational specialty (MOS) was boatswain mate and confirms he served in the U.S. Navy aboard this vessel from October 1970 until his discharge from service in February 1972.

He asserts that, during those "live fire" exercises, the hot shell casings would fall on the floor and then bounce onto his legs, burning a hole through his dungarees, and then onto his skin. He has submitted-photographs of himself purportedly showing burn scars on his legs. In addition, he has submitted lay statements attesting to the presence of these scars and their relation to his military service, and the hearing transcript includes similar testimony.

His STRs show no complaints or treatment for any such burn scars. The report of his February 1972 separation examination indicates he had three "identifying body marks, scars, or tattoos" at the time of that examination; but, again, there is no indication that any of these marks were caused by burns of the type alleged.

At any rate, in further support of this claim, there is a December 2008 statement from one of the Veteran's treating physicians at the VA Medical Center (VAMC). This physician wrote that the burn scars on the Veteran's legs were as likely as not caused by his service in the Navy working in a gun turret. However, this physician has not provided any discussion of the underlying rationale of his opinion, which, as explained, is where most of the probative value is derived. Generally, the degree of probative value that may be attributed to a medical opinion issued by a VA or private treatment provider takes into account such factors as its thoroughness and degree of detail, and whether there was review of the Veteran's claims file, although, as mentioned, mere review of the file is not determinative or dispositive of a medical opinion's probative value. See Prejean v. West, 13 Vet. App. 444, 448-9 (2000). Also significant is whether the examining medical provider had a sufficiently clear and well-reasoned rationale, as well as a basis in objective supporting clinical data. See Bloom v. West, 12 Vet. App. 185, 187 (1999); Hernandez-Toyens v. West, 11 Vet. App. 379, 382 (1998); see also Claiborne v. Nicholson, 19 Vet. App. 181, 186 (2005) (rejecting medical opinions that did not indicate whether the physicians actually had examined the Veteran, did not provide the extent of any examination, and did not provide any supporting clinical data). The Court has held that a bare conclusion, even one reached by a health care professional, is not probative without a factual predicate in the record. Miller v. West, 11 Vet. App. 345, 348 (1998).

A significant factor to be considered for any opinion is the accuracy of the factual predicate, regardless of whether the information supporting the opinion is obtained by review of medical records or lay reports of injury, symptoms and/or treatment. See Harris v. West, 203 F.3d 1347, 1350-51 (Fed. Cir. 2000) (examiner's opinion based on accurate lay history deemed competent medical evidence in support of the claim); Kowalski v. Nicholson, 19 Vet. App. 171, 177 (2005) (holding that a medical opinion cannot be disregarded solely on the rationale that the medical opinion was based on history given by the Veteran). So as the Court made clear in Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008), the probative value of a medical opinion comes from when there is factually accurate, fully articulated, and sound reasoning for the conclusion, not just from mere review of the claims file). See also Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007) ("[a] medical opinion...must support its conclusion with an analysis that the Board can consider and weigh against contrary opinions").

The Board, then, may conversely reject a medical opinion that was based on an inaccurate factual premise. Reonal v. Brown, 5 Vet. App. 458, 461 (1993). But as the Court reiterated in Coburn v. Nicholson, 19 Vet. App. 427 (2006), reliance on a Veteran's statements renders a medical report not credible only if the Board rejects the statements of the Veteran as lacking credibility.

Because of these inadequacies of the medical nexus opinion that was submitted in support of this claim, the Board remanded this claim in April 2013 for additional medical comment on this determinative issue of causation, but also most importantly with provision of the necessary explanatory rationale. In Mariano v. Principi, 17 Vet. App. 305 (2003), the Court indicated it "would not be permissible for VA to undertake such additional development if a purpose was to obtain evidence against an appellant's case." See Mariano, at 312. But the Court distinguished Mariano in Douglas v. Shinseki, 23 Vet. App. 19 (2009). In Douglas, the Court acknowledged its decision in Mariano, but held that VA may undertake the development of additional evidence if, as here, it is necessary to render an informed decision on the claim. Douglas, at 26.

This additional examination occurred in May 2013. The examiner noted that she had reviewed the Veteran's claims file for the pertinent history. She diagnosed bilateral leg scars, so observed their presence. She noted the Veteran's contentions, namely, that he had received these scars after getting burnt by spent shell casings while on active duty in Cuba in 1971. The Veteran denied treatment for the burns and scars in service, as well as after separation. The examiner noted the Veteran had 13 painful scars, which she described as "minimally tender with palpation." She denied the scars were unstable and noted they were superficial and possessed less than deep partial thickness. She specifically noted that the Veteran's right leg had seven scars and his left leg six, all measuring 1.5 cm by 1 cm. Each scar had "a hypopigmented center with...hyperpigmented borders." She further described the scars as flat. The combined total area affected by these "superficial non-linear scars" was marked as 15 cm2 for the right lower leg and 13 cm2 for the left. The examiner indicated the Veteran's scars did not result in limitation of function or impact his ability to work.

Regarding the determinative issue of etiology, the examiner opined that the Veteran's scars were less likely than not (less than 50 percent probability) incurred in or caused by the claimed in-service injury, event, or illness. The rationale was that his STRs did not contain evidence of burns; his separation examination did not document 13 scars to his lower legs despite mentioning a mark on his left hand and a one-inch mark on his left leg; his current scars appeared to have stemmed from wounds that would most likely have required some form of treatment; and the shell casings would have had to have burned through his pants, which there also was no record of.


This is the most probative medical nexus opinion in the file concerning this determinative issue of causation. While the Veteran does have the positive opinion from his treating physician at the VAMC, no rationale was provided for this opinion, which, as explained, is where most of the probative value is derived. See Murphy v. Derwinski, 1 Vet. App. 78, 81 (1990) (wherein the Court recognized that a mere statement of opinion, without more, does not provide an opportunity to explore the basis of the opinion).

While the Veteran is competent to report his experiences in service, the credibility of his statements and testimony regarding the source of these scars is hurt by the absence of any reference to the incident itself, or the resulting scars, in his STRs. Specifically, the fact that his separation examination noted particular marks elsewhere on his body, but did not mention any of the 13 one to one-and-a-half centimeter scars now claimed is probative of their existence, or non-existence, at that time. While that examination did note a one-inch scar or mark on his left leg, this is not approaching the total size and number of the scars on his legs today. Furthermore, from this we know that at the very least that examiner was looking at the Veteran's lower extremities, yet did not view the 13 burn scars consisting of a combined 28 cm in total area. It stands to reason, had there in fact been additional scars, they would have been mentioned, but none were.

In cases involving combat, VA is prohibited from drawing a negative inference from silence in the STRs. But in cases where this inference is not prohibited 
[i.e., non-combat scenarios], the Board may use silence in the STRs as contradictory evidence if the alleged injury, disease, or related symptoms ordinarily would have been recorded in the STRs. Kahana v. Shinseki, 24 Vet. App. 428 (2011). See also Bardwell v. Shinseki, 24 Vet. App. 36 (2010) (For non-combat Veterans providing non-medical related lay testimony regarding an event during service, Buchanan is distinguishable; the lack of documentation is service records must be weighed against the Veteran's statements.).


Indeed, while the absence of contemporaneous medical records does not, in and of itself, render lay testimony not credible, the Board may weigh the absence of contemporaneous records when assessing the credibility of lay evidence. See Buchanan, 451 F.3d at 1336 ("Nor do we hold that the Board cannot weigh the absence of contemporaneous medical evidence against the lay evidence of record"). Moreover, although the Board cannot reject a claimant's statements merely because he is an interested party, the claimant's interest may affect the credibility of his testimony when considered in light of the other factors. See Cartright, 2 Vet. App. at 25; accord Buchanan, 451 F.3d at 1337 (holding that "the Board, as fact finder, is obligated to, and fully justified in, determining whether lay evidence is credible in and of itself, i.e., because of possible bias . . . .").

In this circumstance, the Board must make two preliminary findings in order to rely on this negative inference (see Kahana):

(a) First, the Board must find that the STRs appear to be complete, at least in relevant part. If the SMRs are not complete in relevant part, then silence in the STRs is merely the absence of evidence and not substantive negative evidence. See also Forshey v. Principi, 284 F.3d 1335, 1358 (Fed. Cir. 2002) (en banc) (cautioning that negative evidence, meaning actual evidence weighing against a party, must not be equated with the absence of substantive evidence).

(b) If the STRs are complete in relevant part, then the Board must find that injury, disease, or related symptoms ordinarily would have been recorded had they occurred. In making this determination, the Board may be required to consider the limits of its own competence on medical issues.


Ultimately, the Board must consider all the evidence relevant to the claim, including the availability of medical records, the nature and course of the disease or disability, the amount of time that has elapsed since military service, and any other pertinent facts. Cf. Dambach v. Gober, 223 F.3d 1376, 1380-81 (Fed. Cir. 2000). Thus, when appropriate, the Board may consider the absence of evidence when engaging in a fact-finding role. See Jordan v. Principi, 17 Vet. App. 261 (2003) (Steinberg, J., writing separately) (noting that the absence of evidence may be considered as one factor in rebutting the aggravation part of the section 1111 presumption of soundness).

Here, the Veteran's STRs appear complete - certainly in relevant part. Further, his symptoms ordinarily would have been mentioned and documented had they occurred since he made complaints regarding other health-related issues and there was even mention of another scar or mark on his body. The Board therefore may give more probative weight to the absence of any relevant complaints or findings during his service, including when examined in anticipation of separating from service, than to his current assertions that his scars developed during his military service from the alleged burns to his legs. See Struck v. Brown, 9 Vet. App. 145 (1996) (discussing how contemporaneous medical findings may be given more probative weight than contrary evidence offered years later, long after the fact). See, too, Harvey v. Brown, 6 Vet. App. 390, 394 (1994) (upholding a Board decision assigning more probative value to a contemporaneous medical record report of cause of a fall than subsequent lay statements asserting different etiology); Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997) (upholding Board decision giving higher probative value to a contemporaneous letter the Veteran wrote during treatment than to his subsequent assertion years later).


The Veteran has submitted statements from his spouse, sister, and friend regarding the scars on his legs. The statements are all competent; however, each statement repeats that he had told them he had received the scars in the Navy. They are general statements without specific timeframes and not, as an example, based on their personal eyewitness testimony. They do not claim to actually have been there with the Veteran when the burns supposedly occurred, so do not have firsthand knowledge of their inception. Thus, while their lay testimony is competent concerning this, just as is the Veteran's, their lay testimony is entirely derivative of his recitation of events and, consequently, not credible and ultimately probative just as his is not. See Washington v. Nicholson, 19 Vet. App. 363 (2005).

For these reasons and bases, the preponderance of the evidence is against the claim, so there is no reasonable doubt to resolve in the Veteran's favor, and his claim resultantly must be denied.


ORDER

The claim of entitlement to service connection for burn scars on the legs is denied.



____________________________________________
Keith W. Allen
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs